Robinson, J.
 

 The parties will be referred to here in the relation which they sustained in the trial court.
 

 The record in this case discloses the following facts: Jacob J. Calvert at the time of the happening’ of the events out of which this action grew was the mayor of the city of Cambridge. Ledru R. Campbell was director of public safety of the city of Cambridge, and also “special officer.” John A. Long was chief of police of the city of Cambridge. The American Guaranty Company was surety on the bond of Jacob J. Calvert, as mayor, in the sum of $2,000, conditioned as follows:
 

 “The condition of this obligation is such that whereas the said principal was on the 4th day of November, A. D. 1919, duly elected to the office of mayor of the city of Cambridge, Ohio, for the term of two years beginning on the 1st day of January, 1920, next after his said election, and until his successor is chosen and qualified.
 

 “Now, if the said principal shall faithfully perform his duties as such officer, as required by law during the term for which he has been elected
 
 *535
 
 as aforesaid, then this obligation shall be void, otherwise to remain in full force and virtue.”
 

 The American Surety Company was surety on the bond of Ledru R. Campbell as director of public safety, in the sum of $1,000, conditioned as follows:
 

 “Whereas, said principal was, duly and in accordance with law, appointed director of public safety, of the said city of Cambridge, Ohio, to serve from the 12th day of January, 1920, and until his successor shall have been chosen and qualified:
 

 “Now, therefore, the condition of this obligation is such that, if said principal shall faithfully perform his duties as director of public safety of the said city of Cambridge, Ohio, during the term for which he has been appointed, as aforesaid, then this obligation shall be void; otherwise, to be and remain in full force and virtue in law.”
 

 The United States Fidelity & Guaranty Company was surety on the bond of John A. Long, as chief of police, in the sum of $1,000, conditioned as follows:
 

 “Whereas, the above bounden John A. Long has been duly appointed chief of police of the city of Cambridge, Ohio, for the term of one year beginning January 1, 1912:
 

 “Now, therefore, the condition of this obligation is such that if the said John A. Long shall well and faithfully perform all the duties of his said office, then this obligation to be void, otherwise to remain in full force and effect.”
 

 On or about the 11th day of March, 1921, the defendants Calvert, Campbell, and Long, armed
 
 *536
 
 with a search warrant to search a certain automobile ¡for intoxicating liquors, proceeded some distance out of the corporate limits of the city of Cambridge, where they met the plaintiff, accompanied by a young lady, traveling upon the highway in an automobile. Thereupon Calvert, Campbell, and Long caused the automobile in which they were riding to turn around and pursue plaintiff. • After passing his automobile a number of times, and allowing him to pass them a number of times, they proceeded on past him several hundred yards, stopped their automobile, got out, and as he passed them on the public highway, opened fire upon him and seriously injured him. The record further discloses that none of the parties had a writ of any kind authorizing them to apprehend plaintiff, and the search warrant did not purport to authorize them, or any of them, to search his automobile; that none of the parties, defendant knew who was driving the car which it afterwards developed plaintiff was driving, nor had they any information upon which to base a belief that plaintiff had committed a crime, or was in the act of committing a crime; the attempt to stop the machine of plaintiff and the attack upon plaintiff being made wholly upon the suspicion that he was in the commission of a misdemeanor, to wit, the unlawful transportation of intoxicating liquors; that a search of the person of the plaintiff and his car after the shooting disclosed nothing upon which to found such suspicion.
 

 There is no question raised here as to the liability of the defendants Calvert, Campbell, and Long, to respond in damages for the injury thus
 
 *537
 
 committed, and no error is prosecuted here by the United States Fidelity Ciompany as surety for the defendant Long. Error is prosecuted here by the surety company of the defendant Calvert and by the surety company of the defendant Campbell.
 

 The principal ground upon which each of such companies relies for a reversal is that the bonds given by the respective parties, and signed by the respective surety companies, were for the faithful performance of the duties of the respective defendants as officers of the city of Cambridge; that the powers and duties of C'alvert, as mayor, and of Campbell, as safety director, whatever they may have been within the city of Cambridge, did not extend to the matter of making arrests and searching automobiles beyond the city limits; that as sureties upon the bonds they agreed to respond in the sums named in the bonds only for the breach of their principals of some duty the performance of which their respective offices imposed upon them; that the acts of the defendants complained of in plaintiff’s petition were acts done by Calvert and Campbell outside their territorial jurisdiction, without power or sanction of law, and not acts done in the discharge of any duty imposed upon them by their respective offices, and were, therefore, not within the letter of the contracts of suretyship.
 

 The soundness of the position of the insurance companies depends upon whether Ohio adheres to the theory that sureties are liable upon the bonds of their principals, conditioned for the faithful performance of the duties of the office, only for acts done
 
 viftute officii,
 
 or whether they are also
 
 *538
 
 liable for acts done
 
 colore officii,
 
 for the decisions of the courts of the various jurisdictions upon this subject may be divided into those two general classes.
 

 We, however, are not privileged at this time to choose between the two lines of decisions, for this court as early as 1855, in the case of
 
 Ohio ex rel. Story
 
 v.
 
 Jennings,
 
 4 Ohio St., 418, held:
 

 “A seizure of the goods of A under color of process against B is official misconduct in the officer making the seizure and is a breach of the condition of his official bond, where that is that he will faithfully perform the duties of his office. The reason for this is, that the trespass is not the act of a mere individual, but is perpetrated
 
 colore o-fficii.
 
 For such breach, an action on the bond lies against the officer and his sureties.” .
 

 Ohio is thus placed in line with those courts which have held the sureties upon the bonds of officials not only liable for the wrongful acts of their principals perpetrated
 
 virtute officii,
 
 but also for wrongful acts of their principals perpetrated
 
 colore officii,
 
 and in line with the theory which many of the courts have declared to be the greater weight of authority.
 
 Lammon
 
 v.
 
 Feusier,
 
 111 U. S., 17, 4 S.
 
 Ct.,
 
 286, 28 L. Ed., 337;
 
 Nat’l. Bank of Redemption
 
 v.
 
 Rutledge
 
 (C. C.), 84 F., 400;
 
 People ex rel. Kellogg, Adm’r. v. Schuyler, Sheriff,
 
 4 N. Y., 173;
 
 People ex rel. Norris
 
 v.
 
 Mersereau,
 
 74 Mich. 687, 42 N. W., 153;
 
 Commonwealth ex rel. Davy
 
 v.
 
 Stockton,
 
 21 Ky., 192;
 
 State ex rel. Gates
 
 v.
 
 Fitzpatrick,
 
 64 Mo., 185;
 
 Archer
 
 v.
 
 Noble,
 
 3 Greenl., (Me.), 418;
 
 Hall
 
 v.
 
 Tierney,
 
 89 Minn., 407, 95 N. W., 219;
 
 Turner, Frazer & Co.
 
 v.
 
 Killian,
 
 
 *539
 
 12 Neb., 580, 12 N. W., 101;
 
 Mace
 
 v.
 
 Gaddis,
 
 3 Wash. T., 125, 13 P. 545;
 
 Sangster
 
 v.
 
 Commonwealth, 17
 
 Grat., (Va.), 124;
 
 Lee, Sheriff,
 
 v.
 
 Charmley,
 
 20 N. D., 570, 129 N. W., 448, 33 L. R. A., (N. S.), 275;
 
 Kane, Treas., v. Union Pac. Rd. Co.,
 
 5 Neb., 105;
 
 Charles
 
 v.
 
 Haskins,
 
 11 Iowa, 329, 77 Am. Dec., 148;
 
 Inhabitants of Greenfield v. Wilson,
 
 13 Gray, (Mass.), 384;
 
 Brunott v. McKee,
 
 6 Watts
 
 &
 
 S., (Pa.), 513;
 
 Van Pelt
 
 v.
 
 Littler,
 
 14 Cal., 194;
 
 Horan
 
 v.
 
 People,
 
 10 Ill. App., 21.
 

 However, the courts that have adopted the doctrine of liability both
 
 virtute officii
 
 and
 
 colore officii
 
 have variously applied that doctrine so that there is not entire accord as to the character of acts
 
 colore officii
 
 for which there is a liability of sureties, it being held by some courts that the question of liability of sureties for wrongful acts done
 
 colore officii
 
 is
 
 sui generis,
 
 and dependent upon the particular circumstances of each case, and, by others, that there is a liability of the sureties for the wrongful act of their principal
 
 colore officii
 
 where the officer having a writ executes it against the wrong person, but no liability
 
 colore officii
 
 where an officer commits wrongful acts without a writ.
 

 Here again, however, we are not at liberty to choose which theory we shall adopt, for the reason that this court in 1901, in the case of
 
 Drolesbaugh
 
 v.
 
 Hill,
 
 64 Ohio St., 257, 60 N. E., 202, declared:
 

 “The sureties on the bond of an officer, conditioned for the faithful discharge of his duties, are liable thereon to the party injured, where, under color of his office in making an arrest with or
 
 without warrant,
 
 and, without probable cause, ho
 
 *540
 
 uses more force and violence than is necessary." (Italics onrs.)
 

 Counsel for the surety companies cite the case of
 
 State ex rel. Bd. of Edn. of Cincinnati
 
 v. Griffith. 74 Ohio St., 80, 77 N. E., 686, 6 Ann. Cas., 917, where this court held;
 

 “A public officer is personally, and may be even criminally, liable for malfeasance in office; but the sureties on his official bond are answerable only within the letter of their contract for the unfaithful performance of his official duties and not for dereliction outside of the limits of his official duties."
 

 They maintain it inconsistent with the case of
 
 Ohio ex rel. Story
 
 v.
 
 Jennings, supra,
 
 and with
 
 Drolesbaugh
 
 v.
 
 Hill, supra. We
 
 do not so regard it. The court there did not hold that the sureties were only liable for wrongful acts perpetrated
 
 virtute officii,
 
 but contented itself with the use of' the term “official duties,” and did not attempt to define whether a bond of an official conditioned for the faithful performance of his duties contemplated only the duties imposed upon him by virtue of his office, or whether it also contemplated that he would both faithfully perform the duties imposed upon him by virtue of his office and abstain from doing any wrongful act under color of his office.
 

 That was a case where a clerk of a board of education, having given bond under Section 4050, Revised Statutes, was thereafter by the adoption of a rule by the board of education authorized to collect tuition from children, wards, and apprentices of nonresidents, which was an additional duty
 
 *541
 
 imposed upon. Mm by tbe board and not by statute, tbe court holding that the bondsmen were not liable for the misappropriation by the individual upon whom the board had imposed the additional duty of collecting tuition, his duty in that respect being a duty imposed by the board and not by the Legislature; that his acts were not performed as clerk, but were performed by virtue of the authority which the board vested or attempted to vest in Mm; that the board of education had no legislative power and could not increase or decrease the duties of a clerk, wMeh the law had already defined; that the collection of the tuition by the incumbent of the clerk’s office was not a collection by him in his official capacity, and was not and could not have been in contemplation of the signers of his bond at the time of the execution thereof, and that the bondsmeh were only liable within the letter of the bond. That case would have been applicable in this case had the jury found that the defendant Campbell, at the time of the committing of the assault and injury upon the plaintiff, acted as “special officer” rather than as director of public safety, for the bond of Campbell was conditioned upon the faithful performance by him of his duties as director of public safety, but not conditioned upon the faithful performance by him of his duties as “special officer.”
 

 The case of
 
 State
 
 v.
 
 Medary,
 
 17 Ohio, 554, in principle is like the case of
 
 State ex rel.
 
 v.
 
 Griffith,
 
 supra. One Bates was appointed a member of the board of public works, and as such gave bond. After having become a member of the board of public works, by virtue of the statutes as then
 
 *542
 
 existing he was eligible to election as an acting commissioner of that board, the board being authorized to elect several acting commissioners from among their number, less however than the whole number of the board. As acting commissioner, Bates received certain moneys for which he did-not account. As a' member of the board of public works action wds begun against his- bondsmen, and the court there held that the moneys he received as acting commissioner were not received by him as a member of the board of public works, he being authorized as acting commissioner, and not as a member of the board of public works to receive such money, and, therefore, that the bondsmen were not liable. This, too, would be an authority for exonerating the bondsmen for any act' of Campbell’s as “special officer,” but these cases are not inconsistent with
 
 Ohio ex rel. Story
 
 v.
 
 Jennings, supra,
 
 and
 
 Drolesbaugh
 
 v.
 
 Hill, supra.
 
 This court has not overruled either decision. A logical interpretation of those cases makes the letter of a bond for the faithful performance run to the benefit of all persons for any injury unlawfully caused by' an official either
 
 virtute officii
 
 or
 
 colore officii.
 

 In the case of
 
 Lammon
 
 v.
 
 Feusier, supra,
 
 the Supreme Court of the United States, speaking through Mr. Justice Gray, said, at page 19 (4 S. Ct., 286):
 

 “But the remedy of a person, whose property is wrongfully taken by -the marshal in officially executing his writ, is not limited to an action against him personally. His official bond is not made to the person in whose behalf the writ is
 
 *543
 
 issued, nor to any other individual, but to the government,
 
 for the indemnity of all persons injured by the official misconduct of himself or Ms deputies.”
 

 The opinion of Chief Justice Thurman, in the case of
 
 Ohio ex rel. Story
 
 v.
 
 Jennings, supra,
 
 is quoted with approval therein practically
 
 in toto.
 
 The learned justice also quotes with approval from the opinion of Chief Justice Shaw in
 
 City of Lowell
 
 v.
 
 Parker,
 
 10 Metc., (Mass.), 309, 43 Am. Dec., 436, wherein it was said:
 

 “He was an officer, had authority to attach goods on mesne process, on a suitable writ, professed to have such process, and thereupon took the plaintiff’s goods; that is, the goods of Bean for whose use and benefit this action is brought, and who, therefore, may be called the plaintiff. He therefore took the goods
 
 colore officii,
 
 and though he had no sufficient warrant for taking them, yet he is responsible to third persons, because such taking was a
 
 breach of his official duty.”
 

 The Supreme Court of the United States in that case held that the weight of authority supported a liability of the bondsman upon a bond for the faithful performance of official duty, to include acts wrongfully done
 
 colore officii
 
 as well as
 
 virtute officii.
 

 In the case of
 
 Mace
 
 v.
 
 Gaddis, supra,
 
 the Supreme Court of the territory of Washington, in the syllabus, held: * ‘ The sureties are liable when neither the writ nor the office gave any right to commit the trespass.” And in the opinion, Mr. Justice Langford stated:
 

 “It has been held in several cases that when
 
 *544
 
 a sheriff acts so far beyond his authority that his said acts are a pure trespass
 
 ab initio,
 
 such acts are not done from the color of his office, hence, that his bondsmen are not liable for the trespass. The weight of authority is the other way; and to the effect that acts which are entirely unauthorized by the office, and the writ as a levy made upon property exempt from levy, and a levy upon the property of a stranger to the writ, made the bondsmen liable. It has been held by a large number of authorities, and the Supreme Court of the United States among them, that the bondsmén are liable for such acts as these, where neither the writ nor the office gave any right whatever to commit the trespass. * * * The courts do not clearly define what other acts than the above are such as are done by the color of office, but these decisions do show that the color of office exists where there is not a color of right. We can see no reáson for this rule, except it be that for an officer to pretend he has a right to commit an act because his writ and his office give him the right is color of office. His official position gives him an advantage over private persons, and it being a breach of his official duty to use this advántage, his bondsmen are liable therefor.”
 

 In the case of
 
 Hall
 
 v.
 
 Tierney, supra,
 
 it is stated in the syllabus:
 

 “The object of an official bond is to obtain indemnity against the misuse of an official position for wrong purposes; and that which is done under color of office, and which would obtain no credit except for its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it.”
 

 
 *545
 
 In the case of
 
 Lee, Sheriff,
 
 v.
 
 Charmley, supra,
 
 it is stated in the syllabus:
 

 “(1) The sureties upon'the official bond of a deputy sheriff, who undertake that he shall faithfully and impartially discharge the duties of his office, are' liable for any unlawful or oppressive act done by such officer, under color- or by virtue of his office.
 

 “(2) The purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the misuse of powers belonging to the office, and the assumption under guise of official action of powers not belonging to it. All acts so performed, though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office; and as such may be reasonably considered to have been within the contemplation of the sureties, at the time they entered into the undertaking, as constituting a breach of its conditions.
 

 “(3) A deputy sheriff who falsely claiming to have a warrant for the arrest of a person not formally charged with crime of any kind goes to his house in the nighttime and under guise of the authority of his office arrests and takes such person into custody, has committed an unauthorized and unlawful act under color of his office, for which the sureties upon his official bond are liable in a proper action.”
 

 A majority of this court are of opinion ■ that when a court once reaches the conclusion that the sureties are liable on a bond for the faithful performance of the duties of their principal for any
 
 *546
 
 ■wrongful act done
 
 colore officn,
 
 that any distinction between various wrongful acts done
 
 colore officii
 
 is artificial and illogical.
 

 If, for certain wrongful acts done by an official to the injury of another, such wrongful acts being perpetrated by the official as such, in contradistinction to acts done by him iri any and every other capacity, a liability attaches to his bondsmen, it would seem that for every wrongful act done by him to the injury of another, perpetrated in his official capacity as distinguished from his individual capacity, there should be liability of his bondsmen; it would seem that if a bond conditioned for the faithful performance of the duties of his office is violated by his “seizure of the goods of A, under color of process against B,” as declared in
 
 Ohio ex rel. Story
 
 v.
 
 Jennings, supra,
 
 and a bond conditioned for the faithful performance of the. duties of his office is violated by an officer “where under color of his office in making an arrest with or
 
 without
 
 warrant, and without probable cause, he uses more force and violence than is necessary,” as held in
 
 Drolesbaugh
 
 v.
 
 Hill, supra,
 
 that the same reasoning which required the holding in those cases would require the holding that the bondsmen of an official upon a bond conditioned for the faithful performance of the duties of his office obligate themselves not only that the official will faithfully perform the duties which his office imposes upon him to perform, but also that he will not under color of his office exceed the powers which the office confers upon him; that if it obligates the bondsmen to respond in damages for injuries caused by the official exceeding the powers
 
 *547
 
 which the office confers upon him in certain situations it must necessarily obligate them to respond in damages for injuries caused by his exceeding the powers which the office confers upon him in every case where the injury is perpetrated under color of the office and damage results there-, from.
 

 We have no patience with any theory which would permit each separate case of a class which may be determined by the same general principles to become
 
 sui generis,
 
 for the reason that the doctrine of
 
 sui generis
 
 tends to supplant the fundamental principle that rights and liabilities are such by law rather than by the conscience of the particular tribunal who may be called upon to determine them; nor can we follow the logic of those cases that distinguish between wrongful acts perpetrated by an officer
 
 colore officii,
 
 who having a writ executes it against a person whom the writ does not designate, and wrongful acts perpetrated by an officer, who,
 
 colore officii,
 
 without a writ, commits a wrongful act to the injury of another, for it is the
 
 colore officii
 
 which enables him to commit such act. The wrongful act in each case being an excess of power, the character of the excess is not significant if done under color of the office and injury results therefrom.
 

 In the instant case the wrongful acts done would have been wrongful had they been perpetrated in the city of Cambridge, and, since the jury found they were perpetrated
 
 colore officii,
 
 it makes no difference where they were committed. We, therefore, do not determine the territorial jurisdiction of the mayor and safety director in enforcement of
 
 *548
 
 the Crabbe Act (Section '6212-13
 
 et seq.,
 
 Greneral Code).
 

 It is urged here as a ground of reversal that to the prejudice of the surety companies evidence was permitted to be introduced of admissions made by Campbell and Calvert after the shooting ot me plaintiff, a part of which went in without objection and a part under objection. Evidence of admission was competent as against the parties making the admission, and it would have been error for the court to have wholly excluded it. It was incompetent as against the surety companies.
 

 The court in his charge before argument gave special charge No. 3:
 

 “No admissions made by Campbell or Calvert after the commission of the acts complained of in the amended petition, if you find that they or either of them made such admissions, can bind the defendant surety companies or either of them.”
 

 The court could not have done more, except to have cautioned the jury at the time the evidence was introduced that it could not bind the surety companies. We think that any error in that respect was cured by the charge before argument.
 

 The question whether Campbell at the time of the assault and injury was acting under color of his office as safety director, or whether he was acting under color of his office as “special officer,” was fairly submitted to the jury before argument in requests 3, 6, and 7. On pages 205, 206 and 207 of the printed record, evidence was introduced tending to prove that the acts done by Campbell were done under color of his office as safety direct- or, and evidence was introduced tending to prove
 
 *549
 
 the contrary. Under the instructions given before argument, and in the general charge, the jury were fully advised that unless the acts done were done under color of his office as safety director, a verdict could not be returned against his bondsmen. The jury having returned a general verdict against all of the defendants, it necessarily follows that they found that the acts of Campbell and Calvert were done under color of their respective offices as mayor and safety director.
 

 The liability of each of the surety companies was limited to the sums stipulated in the respective bonds which they had signed, and they were each entitled to have the jury so instructed. No such instruction was given, and it is assigned here by each of them as error prejudicial. Had a judgment been entered against them for the full amount of the verdict it would have been prejudicial. If the court is without power to enter the judgment which it did enter, to wit, against the American Guaranty Company in the sum of $2,000, and against the American Surety Company in the sum of $1,000, then the entry of such judgment was error. It will hardly be contended that the trial court was without power to require the jury to find in the form of a special verdict whether the acts of Campbell and Calvert complained of in plaintiff’s petition were perpetrated under color of their respective offices; nor will it be contended that had he required such a special verdict as to the sureties on the bonds, and the jury had returned a special verdict finding that the acts of their principals were done under color of their respective offices, and had
 
 *550
 
 returned such a general verdict against their principals as it did return, that the court would have, been without power to render the judgment it did render.
 

 The bonds were set out
 
 in extenso
 
 in the petition. The execution of the bonds and all the terms thereof, including the sums .for which they obligated themselves, were admitted by the answers of the sureties on the bonds. As affecting these sureties, there was no issue in this case, except the issue whether the acts complained of were perpetrated under color of the respective offices, for the faithful performance of which they had given bond, and, if so, whether the damages equalled or exceeded the sums named in the bonds. These questions were fairly presented to the jury, and it by its general verdict against all of the defendants answered them in the affirmative.
 

 The trial court treated that verdict as a special verdict in so far as it affected the sureties, and rendered a judgment which was in accordance with the pleadings and the necessary finding of the general verdict against the sureties that the acts complained of were done under color of office. While his action in that respect was novel, we are unable to see wherein the sureties were prejudiced thereby.
 

 The judgment is affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day. and Aleen, JJ., concur.