IRVING TRUST CO. v. UNITED STATES et al. *

No. 7203.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1936.

*Writ of certiorari denied 56 S. Ct. 956, 80 L. Ed. ——.

Irwin N. Loeser, of Cleveland, Ohio, for appellant.

Sidney N. Weitz, F. J. Perkins, and Richard R. Hollington, all of Cleveland, Ohio (John W. Bricker, of Columbus, Ohio, and C. F. Carr, L. W. Wickham, Marc J. Grossman, Rudolph A. Cannon, R. C. Renaud, A. E. Bernsteen, McKeehan, Merrick, Arter & Stewart, and Garfield, Cross, Daoust, Baldwin & Vrooman, all of Cleveland, Ohio, on the brief), for appellees.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

The Guardian Trust Company is a state bank and trust company organized under the laws of Ohio, with its place of business in Cleveland, Cuyahoga county, Ohio. On March 6, 1919, the judge of the United States District Court for the Northern District of Ohio, acting under section 61 of the Bankruptcy Act (11 U.S.C.A. § 101), designated the Guardian Company as a depository "for the money of bankrupt estates in and for the County of Cuyahoga in this Judicial District." The Guardian Company executed bonds to the United States to secure the deposits with the Standard Accident Insurance Company and the American Surety Company as sureties thereon. In November of 1924, the judges of the District Court entered an order prohibiting depositories designated for bankruptcy funds from accepting deposits of such funds in excess of the amounts of their bonds therefor without permission of the court. The deposits in the Guardian Company being in excess of the amount of its surety bonds on October 5, 1932, the company on that date made application to the court to be permitted to furnish collateral security in lieu of bond for the excess deposits. This and a similar request made on February 18, 1933, were granted, and collateral in the form of government bonds was delivered to the clerk of the court as additional security. On April 18, 1933, the Guardian Company, not being able to meet its obligations, was taken over by the superintendent of banks for the state of Ohio and since then has been in process of liquidation under the Ohio Statutes (Gen.Code Ohio, § 710-85 et seq.). At the time it was taken over by the superintendent of banks, the securities which it had given amounted to $152,000. It was chargeable at the time with funds of bankrupt estates deposited by local receivers and trustees in an aggregate amount of $141,679.04.

In July and August of 1932, the Retail Chemists Corporation, a New York corporation, and the United Cigar Stores Company of America, a New Jersey corporation having its principal place of business within the Southern District of New York, were adjudged bankrupts. The Irving Trust Company of New York was duly elected and qualified in the Southern District of New York as trustee in bankruptcy of each of these corporations. Each had retail stores in many sections and federal court districts of the country. Prior to bankruptcy each had deposited the proceeds from the sales in its stores in northern Ohio in the Guardian Company. By order of the District Court of the Southern District of New York, the trustee of each was authorized to continue the operation of the bankrupt's business and to deposit the moneys received therefrom in designated depositories within and without the district. Following the entry of this order, the trustee wrote the Guardian Company and inquired whether it was a designated depository of bankruptcy funds, to which the Guardian Company replied that it was "an authorized depository of bankruptcy funds by the Federal District Court." Thereafter the Irving Company directed its agents operating the stores in the Northern District of Ohio and adjacent territory to deposit the proceeds from sales in the stores in the Guardian Company, and to use that company as a commercial bank. At the time of the failure of the Guardian Company, the Irving Company had on deposit with it funds of the estate of the Cigar Stores Company amounting to $282,911.79, and funds belonging to the estate of the Chemists Corporation amounting to $17,893.80. Later this action was instituted in the District Court on behalf of the local receivers and

trustees of bankrupt estates in the Northern District of Ohio to recover their deposits from the sureties on the depository bonds, the Standard Accident Insurance Company and American Surety Company, and to obtain a distribution of the proceeds of the sale of the government bonds deposited with the clerk of the court. The Irving Company, as trustee for the Cigar Stores Company and the Chemists Corporation, intervened, claiming a right to participate in the security of the surety bonds and the proceeds of the sale of the collateral. By cross-bill it asserted a lien on the assets of the Guardian Company in the hands of the superintendent of banks for any balance due it after such participation. Upon the hearing the trial court dismissed the Irving Company's petitions, decreed liability against the surety companies to the extent of their respective bonds, and ordered the payment of the amount thereof into court for distribution with the proceeds of the sale of the government bonds among the local trustees and receivers in the proportion that the amount due each bore to the aggregate amount to be distributed. The Irving Company, as trustee, has appealed, contending: (1) That it is entitled to participate in the funds; and (2) to the extent that it is not, its deposits were impressed with a trust in the hands of the Guardian Company for which the assets of that company are liable in preference to the claims of other creditors.

The appeal presents two controversies: One between the Irving Company, as trustee for the Cigar Stores Company and Chemists Corporation, and the local receivers and trustees of bankrupt estates, with whom are the two surety companies; the other between the Irving Company, as trustee, and the superintendent of banks of Ohio representing the general creditors of the Guardian Company.

■ The claim of the Irving Company to the protection of the securities given by the Guardian Company rests upon the terms of the order of the court designating the Guardian Company as depository together with the obligations of the depository bonds. The order designated the Guardian Company as a depository for the money of bankrupt estates in and for the county of Cuyahoga in the Northern District of Ohio. The obligations of the bonds were that the Guardian Company would faithfully discharge and perform its duties as depository, safely keep all money deposited, and pay the same only according to law and the orders of the court. The Irving Company contends that there is nothing in the terms of the order of designation restricting the Guardian Company to the acceptance of deposits of bankrupt estates administered in the District Court for the Northern District of Ohio. We think the designation must be considered from the point of view of a grant of power or authority, that is, power or authority to the local trustees and receivers to deposit and the bank to receive deposits of funds of bankrupt estates, and, as so considered, it is to be treated as authorizing the Guardian Company to receive the funds of such estates administered in the court of the judicial district for the Northern District of Ohio. The grant went no further, and, being thus limited, the bonds given under section 61 of the Bankruptcy Act are likewise limited in their obligation, that is, to secure the deposits of funds of bankrupt estates in administration in the county of Cuyahoga, Ohio, and the judicial district for the Northern District of Ohio.

■ It is said by the Irving Company that the bonds must be read and construed in the light of the intent and purposes of the Bankruptcy Act; that the act is national in its scope (Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645); that section 47 (a) (3) requiring trustees to deposit all money received by them in a designated depository is mandatory [R. J. Reynolds Tobacco Co. v. Jones Co. (C.C.A.) 54 F.(2d) 329]; that the District Court for the Southern District of New York authorized the trustee to make deposits in designated depositories "in and out of the District"; and that ancillary administrations of bankrupt estates are discouraged by the Supreme Court because they are wasteful and inconvenient. It concludes from these irrefutable propositions that it was the intention of the Bankruptcy Act to permit a trustee to deposit funds in designated depositories outside the jurisdiction of the court administering the bankrupt estate, and that a bond executed by such a depository should be construed as protecting deposits by foreign trustees as well as trustees in the jurisdiction making the designations without regard to its apparent obligations as fixed by the order of designation. We do not think

there is any such intent or purpose in the act. The provision authorizing the designation of depositories and requiring the protection of deposits by bonds contemplates, it seems to us, action on the part of the courts in respect to funds under their control, not the safeguarding of funds which other courts are engaged in administering. In requiring the security from the Guardian Company, it was plainly the purpose of the court, we think, to protect only such funds as were under its administration. That purpose is made apparent by the order requiring that the deposits be reported by the receivers and trustees at regular intervals to the clerk of the court, and, in the event the total exceeded the bonded liability, the depository should furnish additional security. Had proceedings been instituted in the Northern District of Ohio ancillary to the cases in the New York court, there might be reason for contending that the security given by the Guardian Company was for the benefit of the Irving Company as well as for local trustees and receivers; but there was no ancillary proceeding in either case and nothing done to give the Ohio court control or supervision of the funds of the bankrupt estates or to advise it either that any funds had been deposited in the Guardian Company or that the Irving Company, the foreign trustee, expected to participate in the protection of the security. Without such advice the court could not determine whether the deposits of its own receivers and trustees were adequately protected or its order of November, 1924, complied with. It was within the power of the Irving Company, under the Ohio Statutes (Gen.Code Ohio, §§ 710-156, 710-157), to require bond from the Guardian Company to protect its deposits. Having failed to do so, it cannot claim the benefit of security given for the protection of funds under the control and administration of the Ohio court.

■ Another contention of the Irving Company is that the Guardian Company, having been designated as a depository by the Ohio court, was an officer of the court, and that in accepting deposits from the Irving Company it was acting "under color of its office," and its sureties, the two surety companies, are liable for its dereliction. The weakness of this contention is that the Guardian Company was not an officer of the Ohio court for the purpose of receiving deposits of the Irving Company. It may well be doubted that it could be said to be an officer of the court for the purpose of receiving or holding the funds of local receivers and trustees. Cf. In re George-Mort Art Calendar Co., 78 F.(2d) 529 (C.C.A.6). The cases relied upon by the Irving Company do not indicate that it was. In Lammon v. Feusier, 111 U.S. 17, 4 S.Ct. 286, 28 L.Ed. 337, the act complained of was committed by a marshal of the court under color of his office; in National Bank of Redemption v. Rutledge, (C.C.) 84 F. 400, it was committed by a county auditor; and in American Guaranty Co. v. McNiece, 111 Ohio St. 532, 146 N.E. 77, 39 A.L.R. 1289, by officials of the city. In these cases the parties guilty of the derelictions were acting under color of their respective offices. Here, as we have seen, the Guardian Company was not appointed a depository for the funds of foreign trustees, and was accordingly not acting under color of a court designation in accepting deposits from the Irving Company.

■ Finally it is contended that if it be held that the Guardian Company was not an authorized depository for funds of foreign trustees and receivers, and that such trustees and receivers are not entitled to participate in the security given by it, then it should be regarded as a trustee ex maleficio, and for that reason the Irving Company should be adjudged a lien on its assets as against other creditors. To this contention the superintendent interposes an objection to the jurisdiction of the court to adjudge a lien against the assets in his hands, his contention being that, having taken over the bank for liquidation under the state laws, there is no power in a federal court to step in and direct the course of liquidation by adjudging a lien on its assets. The trial court sustained the contention. We think the jurisdiction exists. Vacuum Oil Co. v. Land Title Guaranty & Trust Co., 80 F.(2d) 476 (C.C.A.6). The basis of the Irving Company's contention is that title to the funds never passed to the Guardian Company. There are cases holding that where a public officer, acting in his official capacity, makes a deposit of a public fund in his custody in a bank without authority so to do, and where the bank has no authority to receive the deposit, the title does not pass and the fund may be recovered if traced. Board of

Com'rs v. Strawn, 157 F. 49, 15 L.R.A.(N. S.) 1100 (C.C.A.6); Empire State Surety Co. v. Carroll County (C.C.A.) 194 F. 593; Allen v. United States (C.C.A.) 285 F. 678; American Surety Co. v. Jackson (C. C.A.) 24 F.(2d) 768, 769. These cases in-volved funds belonging to a governmental unit deposited in a bank in violation of a prohibitory statute. The theory on which they were decided, it would seem, is that when a bank is prohibited by statute from accepting a deposit, title does not pass as in the case of an ordinary deposit, and although possession passes, the right of possession remains where it was before the deposit was made—with the holder of the title, who may exercise the right when he finds the fund. The same theory has been applied by some of the District Courts to deposits by trustees of funds of bankrupt estates in banks not designated as depositories or in designated depositories which failed to give security. In re Potell, 53 F.(2d) 877 (D.C.E.D.N.Y.); In re Weiss (D.C.) 2 F.Supp. 767; In re Ocean City Title & Trust Company's Bond (D.C.) 6 F.Supp. 311; Hillsdale Grocery Co. v. Union & People's Nat. Bank (D.C.) 6 F. Supp. 773. See, also, In re Battani (D.C.) 6 F.Supp. 376, dicta to the same effect. We think it was erroneously applied, for the trustee takes title to the bankrupt's funds [11 U.S.C.A. § 110 (a); Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 51 S. Ct. 270, 75 L.Ed. 645], which are private funds. Florida Bank & Trust Co. v. Union Indemnity Co., 55 F.(2d) 640, 641, 83 A.L.R. 1102 (C.C.A.5). And when the funds are deposited in a bank, the ordinary relation of creditor and debtor arises between the trustee and the bank. Gardner v. Chicago Title & Trust Co., 261 U.S. 453, 456, 43 S.Ct. 424, 67 L.Ed. 741, 29 A. L.R. 622. In such case there is no trust ex maleficio.

The case before us is similar to In re Bogena & Williams, 76 F.(2d) 950 (C. C.A.7), where the trustee deposited funds of a bankrupt estate in a bank which was not a designated depository for bankruptcy funds but was a designated depository for other United States funds. After the bank failed, the trustee asserted a lien on the assets of the bank to satisfy his claim, alleging that title to the funds had not passed and that the bank held them in trust. The court held that a trust ex maleficio did not arise by reason of the bank's accepting the deposit, distinguishing the case from the cases here relied on by the trustee involving acts of public officers in dealing with public funds. The court was unwilling to follow the District Court cases, supra, assuming that the trustee had given bond for the faithful performance of his duties and the creditors of the bankrupt would not suffer, and saying that the trustee was negligent in not ascertaining the proper place to deposit his funds and it would be unfair to permit him to receive a preference in derogation of the rights of general creditors. In that case, as in this, the bank was a depository for designated funds but not for the kind of funds deposited by the lien claimant. The only difference between the two cases is that there the bank informed the trustee upon inquiry that it "presumed" it was a depository, whilst here the bank stated that it was an authorized depository for bankruptcy funds by the District Court. Here the bank was in fact a depository for funds of bankrupt estates under administration in the Ohio court. If it may be assumed that the Irving Company construed the bank's statement as meaning that it was a designated depository for funds of other bankrupt estates, it should have made some effort to find out whether bonds to protect such funds had been given. Furthermore, it should have known that the Ohio court, being ignorant of bankrupt estates not under its administration, could not assume that the funds thereof would be deposited in the Guardian Company or require bond for their protection. The Irving Company could not escape the duties imposed upon it by section 70a of the Act as amended by Act May 27, 1926, 11 U.S. C.A. § 110 (a) by relying on an unverified statement of the bank. We may assume, as did the court in the Bogena Case, that it gave bond as trustee for the faithful performance of its duties. It had the right to require a bond from the Guardian Company to protect its own bond before making the deposits. It could have ascertained, as pointed out, whether the Guardian Company was a depository for funds of trustees and receivers other than those in the Ohio district. It inquired neither as to that nor as to whether there were depository bonds and their coverage, but deposited its money in the bank as a general depositor in a checking account. It would be inequitable to require the repayment to it of the balance in its account at the time the bank closed in preference to the claims of oth-

ers who similarly failed to require bonds to protect their deposits.

The decree is affirmed.