[Civ. No. 6002. First Appellate District, Division One.—October 21, 1927.]

A. J. FLEUTI, Appellant, v. C. A. APPLEDORN, Respondent.

Hayes, Oliphant & Dukette and David D. Oliphant, Jr., for Appellant.

McKee, Tasheira & Wahrhaftig for Respondent.

PARKER, J., *pro tem.*—Appeal by plaintiff from a judgment in favor of defendant in an action wherein plaintiff sought damages resulting to him by reason of defendant's failure to place said plaintiff in possession of certain premises.

There is little dispute regarding the facts of the case, and an outline thereof follows:

Defendant Appledorn on January 16, 1920, executed a three-year lease to certain parties named Lundquist and Chester (not parties to this action). By its terms this lease was to expire on January 15, 1923. The lease contained a provision giving Lundquist and Chester the right or option to extend it for an additional two years, and this option could be exercised at any time before the expiration of the term. On November 22, 1922, and while the Lundquist and Chester lease was still in force Appledorn executed to the plaintiff and appellant herein, Fleuti, a lease upon the same premises for a term of five years, commencing on January 16, 1923. The lessees under the first lease elected to exercise the option of extension, and in pursuance thereof remained in possession and the plaintiff Fleuti, lessee under the second lease, was refused possession and was never let into the premises to him demised.

At the trial of this action it was stipulated between the parties in open court that the reasonable rental value of the premises covered by the lease was fifty dollars per month in excess of the rental provided for in the lease, and that if defendant were liable the judgment should be for the sum of three thousand dollars. It may be noted in passing that this sum stipulated as damages represents the entire damage to plaintiff, and does not include any elements save difference between amount of rent and actual

value of the premises. There is no showing or claim of damages accruing by reason of loss of business, ·expense of moving or damage to merchandise.

The lease to plaintiff Fleuti was in the general form and no point is made as to its sufficiency. This lease, however, contained a paragraph around which centers the present controversy, and that paragraph is as follows:

"It is further agreed by the party of the first part and the party of the second part, if circumstances beyond the control of party of the first part should arise that the party of the first part should not be able to deliver the hereinabove specified premises on the date agreed, all money deposited to the party of the first part should be returned in full to the party of the second part."

Perhaps unnecessarily, it may be stated that party of the first part described the lessor Appledorn, the defendant herein.

The plaintiff testified that he personally took no part in the negotiations preceding the execution of the lease to him, and that he had no conversation with the defendant prior to the signing of the lease. The plaintiff further testified that he did all of the business with his agent, a Mr. Poney. It was also in evidence on the part of plaintiff that on November 8, 1922, a few days prior to the execution of the lease, the plaintiff made a deposit of fifty dollars to bind the agreement and received from defendant a written acknowledgment of receipt thereof. In this acknowledgment appears the clause, "If circumstances beyond the control of the owner should arise the money deposited should be returned."

The defendant, over the objection of plaintiff, was permitted to show, and did offer testimony showing, that at the time of and before the execution of the lease all of his negotiations were with one Mr. Poney, agent of plaintiff. The trial court permitted defendant to show that the premises were subject to the lease and option of Lundquist and Chester, and that at the time of the negotiations with plaintiff's agent Poney this fact was divulged and the said Poney well knew the situation then existing. Defendant Appledorn testified, over objection of plaintiff, that many times before November 8th the prior lessees, Lundquist and Chester, had advised him orally that they would not take advan-

tage of their option, but would vacate on January 15, 1923. The first time he was so notified was in August, 1922, and the assurance was repeated each succeeding month at the time of rent collection. On January 10, 1923, the said lessees, however, advised the owner of their intention to remain.

The trial court found upon sufficient evidence that the existence of the Lundquist and Chester lease and the option of renewal therein contained was known to plaintiff at the time of the execution of the lease to him, and that defendant notified plaintiff of the existence of said option and stated that he was willing to lease the premises to plaintiff subject to the exercise of said option, and that plaintiff was willing to accept a lease subject to the exercise of said option, and that in order to make said lease subject to the option the provision hereinabove set forth was inserted.

The court further found that it was the intent of said provision in the lease here involved, and so understood by plaintiff and defendant, that in the event said Lundquist and Chester should exercise the option in the lease executed to them, the exercise of which option was a circumstance beyond the control of defendant herein, then and in that event said defendant should be released from all liability arising out of the execution of the lease to plaintiff and said lease last referred to should be at an end and both parties thereto should be released from any liability thereunder.

Appellant here contends that upon the facts as admitted and upon the stipulation as to damages the trial court erred in not entering judgment in his favor for the amount stipulated as damages, namely, three thousand dollars. Appellant strenuously urges that the provision in the lease as to failure to deliver possession is plain, clear, and unambiguous, and does not require the aid of extrinsic evidence to determine its meaning.

Without detailing separately each of appellant's points urged it will suffice to state that it is his claim that even if we find the court below properly admitted oral testimony to aid in construing the contract, that nevertheless the testimony adduced was insufficient to support the judgment rendered. It is urged that the facts here shown are not sufficient to be deemed "circumstances beyond the control" of the lessor to deliver possession, and then he further urges

that even if it be found that defendant was unable to deliver possession by circumstances beyond his control, yet he was not freed from further liability, but could still be called upon to respond to plaintiff for whatever damage followed his failure, even after the return of the deposit or other moneys received.

The old rule of restricting the admission of parol testimony to vary the terms of a written contract is invoked. This rule, however, has its limitations. Conceding its force, nevertheless it is correlated with many other rules of construction, and its force somewhat diminished in cases where manifest injustice would result from a too rigorous adherence thereto. However, accepting the rule of law prohibiting the admission of oral testimony to vary or alter the terms of a written contract, we have still the rule permitting, if not compelling, the admission of testimony that will explain and interpret the meaning of doubtful terms in a written contract, and also the rule which commands an examination into all of the facts and circumstances surrounding the parties and the subject matter to illustrate the true intent and application of words or phrases of ordinarily common meaning.

In the instant case all parties knew of the existence of the prior lease and that the exercise of the option given therein, would leave the premises beyond the control of the lessor Appledorn, and the evidence shows that at the time of negotiating for the lease under discussion here the defendant Appledorn informed plaintiff of this impediment to his contractual capacity with reference to the premises. Plaintiff himself prepared the writing and the language employed was his. At the instance of defendant and his demand that the contract cover the question of the option of the prior lessees and provide against the event of its exercise plaintiff inserted the paragraph here involved. We are not dealing with a case where it is claimed that performance became impossible after execution due to something extraneous. Here the situation was fully disclosed, and the purpose of the provision was to limit rights and liabilities of the parties in the event of the exercise of the option of the prior lessees. ▪ The term "circumstances beyond control" has no definite or settled meaning either in the law of contracts or elsewhere. True, many authorities

may be found to establish what facts or circumstances will or will not excuse performance. But none will be found to hold that when the parties to a contract themselves agree upon a cause sufficient to excuse it, the possibility of performance will be tested by those authorities.

In the brief of appellant herein we find him contending for this principle of law, viz.: "If a certain intention was sought to be expressed the contract should be so construed so long as the language used may fairly include it," citing *Balfour* v. *Fresno Canal & Irr. Co.*, 109 Cal. 221 [41 Pac. 876]. ■ We think it follows that under the circumstances shown to have existed the trial court was clearly right in admitting evidence of the surrounding circumstances to aid it in determining just what was sought to be expressed, and the admission of this evidence was essential and necessary before it could be determined whether or not the language used might fairly include it.

It is quite unnecessary to go beyond the decisions of our own courts for ample light to guide us.

In the early case of *Walsh* v. *Hill*, 38 Cal. 481, the court says: "The only rule of much value—one which is frequently shadowed forth but seldom, if ever, stated in the books—is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed; then taking it by its four corners read it." Again, in *Eastman* v. *Piper*, 68 Cal. App. 554 [229 Pac. 1002], this language is found: "A grant is to be interpreted in the same manner as any other contract, so as to give effect to the intention of the parties if that intention can be ascertained. (Civ. Code, secs. 1066 and 1636.) The intention is to be gathered from the four corners of the instrument. But the rule that the intention is to be ascertained from the writing alone where the contract is reduced to writing is subject to other rules of law for the interpretation of contracts. One of these is that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates (sec. 1647, Civ. Code). Another rule is that the contract should be read in the light of the general intent of the parties and the object sought to be attained by them."

■ From the language of the lease here involved and with particular reference to the surrounding circumstances

under which it was executed, we think it clear that the underlying purpose of the parties and their main intention was to condition delivery of the demised premises upon the option in the prior lease, and that the term "circumstances beyond the control of the party of the first part" was intended to refer exclusively to this prior option.

Therefore, with this construction we come to the next clause, dealing with the liability of the lessor in the event of this happening.

The language of the instrument is that if delivery was thus prevented by circumstances beyond the control of the lessor, then all money deposited to the party of the first part should be returned in full to the party of the second part. Likewise, in the original receipt for deposit appears the clause: "If circumstances beyond the control of the owner should arise the money deposited should be returned."

Appellant's position is that if we find that delivery was beyond the control of the owner, and even if we find that delivery is excused, nevertheless the lessor is still bound to the lessee for all legal claims of damage in addition to his return of moneys paid. Appellant contends that the wording of the contract is clear and unambiguous to the effect that it sets forth but one thing, namely, the return of the money, but that in all other respects the rights and liabilities of the parties remain unaffected.

In the first place, applying such rules as have been hereinbefore referred to, we do not feel that the term "in full" is in itself so definite and certain as to foreclose all inquiry into its meaning or the use in which it was employed. It is obvious that a mere return of the money could have been assured without specifying "in full." The money deposited was everything of value that the lessor received; and if the lessee demanded anything further from him upon his inability to perform it was his duty to specify the same in his contract. Obviously the contract is subject to explanation and is indefinite and uncertain on its face as to what liabilities follow a failure of delivery of the premises unless, forsooth, the return of the moneys as therein provided ended the matter. The trial court, therefore, had the alternative of accepting the provision for the return of the moneys in full as being the limit of the lessor's liability, or

else receiving testimony to determine the intent of the parties on this point. The court did take testimony, and on sufficient evidence found that the return of the moneys in full satisfied all claims of the lessee and discharged the lessor from all further liability. We are content to accept this finding.

Appellant also complains that it was beyond the power of the court to order a judgment in his favor for the return of the moneys deposited, the pleadings being framed solely on the issue of damages. However, from the record before us we understand that plaintiff has since accepted this money on an agreement that this acceptance shall not affect the merits of his appeal. We have not considered this acceptance by plaintiff for any purpose at all save to preclude discussion of the question raised on the form of judgment.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.