145 P.2d 864

## VALDEZ v. HERRERA.

### No. 4809.

Supreme Court of New Mexico.

Feb. 17, 1944.

Manuel A. Sanchez, of Santa Fe, for appellant.

George E. Remley and Joseph M. Montoya, both of Sante Fe, for appellee.

MABRY, Justice.

This is an election contest case. Contestant-appellant appeals from the judgment in favor of contestee-appellee awarding to him the office of County School Superintendent of Rio Arriba County. In the general election held November 3, 1942, the County Canvassing Board of Rio Arriba County, New Mexico, credited contestant with having received a total of 3154 votes as against contestee 3272 votes for the office in question, and issued a certificate of election based upon said figures. Said total votes did not include the votes cast, counted, tallied, returned and certified by precinct election officials for either contestant or contestee in precinct 36 (Skarda), 47 (Canones), 23 (Youngsville), or 1A (Dixon), nor the corrected number of votes received by either contestant or contestee in precinct 19 (Chama). In all of the first 4 precincts above mentioned, but excluding Chama (in which there would be a difference of only 3 votes in any event) the votes cast, counted, tallied, returned and certified gave contestant 338 and contestee 115, clearly a difference of enough to elect contestant if the votes from such 4 precincts are to be counted and accepted, regardless of any other consideration or error relied upon by either contestant, or by contestee in his cross appeal.

As to these 4 precincts, 36, 47, 23 and 1A, there is no dispute concerning the facts and there is no charge of bad faith or fraud. The County Canvassing Board refused to canvas the votes cast in these 4 precincts and refused to count and carry them forward into the general election results because the poll books were not delivered within 24 hours of the closing of the polls as was required by Sec. 7, Chap. 153, Laws of 1939 (1941 Comp., Sec. 56-344). This statute reads:

"Immediately upon the conclusion of the counting and tallying of the votes and certifying the same and placing the ballots, affidavits for assistance, and envelopes in the ballot box, said ballot box, all election supplies, and one (1) poll book, or where there are counting judges one (1) poll book certified by each set of election officers, and the book of bound original affidavits of registration shall be immediately returned to the county clerk by the judges, and the other poll book or books shall be immediately placed in the mailing tube and mailed to the secretary of state. The poll book, registration book, and unused election supplies returned to the county clerk shall not be placed in the ballot box. An election judge of one (1) of the political parties shall return to the county clerk one (1) of the keys to the ballot box enclosed in an envelope addressed to said clerk; a judge of the opposite political party shall place his key in an envelope provided for that purpose, and mail it to the judge of the district court of the county in which the election is held. The district judge shall retain such key in his possession until the destruction of the ballots as herein provided, except as herein otherwise provided after which it shall be delivered to the county clerk."

"If the voting place is not more than twenty-five (25) miles distant from the county seat, the ballot box, key, poll book, the book of bound original affidavits of registration and unused supplies shall be delivered forthwith to the county clerk by one (1) or more of the judges in person, but the same may be sent to the county clerk by messenger selected by the judges for that purpose, if the county seat is more than twenty-five (25) miles distant."

"Where any ballot box, any poll book, book of bound original affidavits of registration, are not delivered in accordance with these instructions within twenty-four (24) hours of the close of the polls, the vote in that precinct shall not be counted or canvassed unless a petition is presented to the district judge of the district within which such precinct is contained and a sufficient showing made that the delay was due to forces beyond the control of the election officials, and then only when said district judge shall so find and make an order that the votes cast in said precinct shall be canvassed and become part of the final election result. Said petition may be filed in the district court by any election official or any interested party without cost. (Laws 1927, ch. 41, sec. 343, p. 62; C.S. 1929, sec. 41-343; Laws 1935, ch. 147, sec. 41, p. 371; 1939, ch. 153, sec. 7, p. 306.)"

Upon the refusal of the County Canvassing Board to so canvas the votes for the 4 precincts in question, the Republican county chairman of Rio Arriba County sought an order of district court requiring the counting and canvassing of the votes of these 4 precincts, but without securing such recount.

The contestant then instituted mandamus proceedings whereby he sought to have the votes of these 4 precincts included in the election results to be canvassed, and failing in that he instituted this contest proceeding (under authority of 1941 Comp. Sec. 56-601 to 56-610). The district judge acting in the mandamus proceeding, evidently interpreted the circumstances hereinafter to be noticed, which influenced the conduct of the election officials whose duty was to get the ballot boxes and the poll books into the county clerk's office within 24 hours, as not meeting the statutory requirement that the delay encountered was not "due to forces beyond the control of the election officials", as provided in Sec. 56-344, supra.

Although the district judge, in the trial of the contest proceeding, found there was no fraud or bad faith on the part of the election officials in any of the 4 precincts in question, obviously determined as a matter of law that he could afford no relief in view of the mandatory character of the statute and held for contestee.

The delay in delivery involved in this proceeding has reference to the delay in the delivery of the poll books and ballot boxes from precincts 23 and 36 and the poll books only from precincts 47 and 1A. It is necessary in consideration of this question to set out the circumstances sur-

rounding the delayed delivery as to each of the said precincts.

The voting place in precinct 36 (Skarda) is more than 75 miles from the office of the county clerk of Rio Arriba County; the ballot boxes and poll books from this precinct were forwarded to the county clerk by truck from Skarda to Antonito, Colorado, and from there sent by Railway Express to Chama, and from Chama by bus. In the ordinary course of express and bus, these ballot boxes and poll book could not be delivered to the county clerk's office within 24 hours after the closing of the polls. The ballot box and poll book arrived at the county seat on November 5th after having been placed in the express office at Antonita, Colorado on November 4th.

As to precinct 47 (Canones) the voting place of this precinct is more than 50 miles from the county clerk's office. The judges of election personally delivered the ballot box to the county clerk's office within 24 hours of the closing of the polls, but they placed the poll books in the post office at Canones, addressed, and for delivery, to the county clerk. Upon arriving at the county seat with the ballot box, the judges of election were advised that they should also have brought with them the poll book. They then returned and withdrew the poll book from the post office and conveyed it to the county clerk's office. But, because of the long distances to be traveled they did not, and perhaps could not, reach the county clerk's office with the poll book within 24 hours after the closing of the polls. The poll book so retrieved from the post office by the election officials could not then have been delivered to the county clerk's office within 24 hours after the closing of the polls, in any event. The books were deposited in the post office at Canones before 1:00 o'clock P.M. on November 4th, the day after the election.

The voting place in precinct 23 (Youngsville) is more than 60 miles from the county clerk's office. In this case, the election officials deposited both the poll book and the ballot box in the U.S. mail at Youngsville post office for delivery to the county clerk's office on the morning of November 4th. In the ordinary course of mail, these, likewise, could not reach the county clerk's office within 24 hours after the closing of the polls.

The voting place of precinct 1A (Dixon) is more than 75 miles distant from the county clerk's office, and, while the ballot boxes from said precinct were delivered in person to the county clerk within the 24 hour period and before noon of November 4th, the poll book was deposited in the U.S. post office at Dixon, New Mexico, on November 4th by the election official in charge, properly addressed to the county clerk's office. But, the poll book in question could not, in the ordinary course of the mails, reach the county clerk's office within 24 hours after the closing of the polls. These voting precincts, it will be noticed, are in somewhat isolated sections of Rio Arriba county, one of the larger

counties of the state, with the substantial handicap of slow transportation and poor connections with the county seat, particularly when the U.S. mails are to be employed as the "messenger".

The parties stipulated that the delay, as to all of the 4 precincts, was "not by reason of any attempt to change or alter said returns or for any fraudulent purpose whatever, and no claim of any fraud or attempted fraud relative thereto has ever been made". This would be equivalent to saying that the election officials were not seeking delay, but were at most honestly mistaken as to the method to be employed in getting the ballot boxes and poll books to the office of the county clerk, the final repository.

We thus approach the question as one of law simply. We are called upon to appraise the statute which contestee would strictly, and we must say, somewhat technically, construe, and as to which contestant would ask for a liberal construction in order that some 450 voters, as he contends, may not be disfranchised because of an honest misunderstanding on the part of the precinct election officials as to the requirements of the statute.

Each and all of the precincts in question were "more than 25 miles distant from the county seat", so it would not be required, under the provisions of the statute (56–344, supra), that one or more of the judges should deliver the ballot box, poll book, etc., in person to the county clerk. Such ballot box, poll book, etc. are, because of the distance from the county seat, authorized to "be sent to the county clerk by *messenger* selected by the judges for that purpose". There is no showing that the copy of the poll book to be sent to the secretary of state was not regularly mailed as the law provided. No badge of fraud or bad faith on the part of the election officials is present, but it is clear that such officials were confused as to their duties, merely.

One of the circumstances upon which contestant strongly relies, and properly so, we believe, is that it was through error in the instructions given to these precinct election officials which caused the mailing of the poll books from the precinct post offices, and that this error accounted for the officials overlooking, or ignoring, the provisions of the statute which require that all returns be delivered to the county clerk within 24 hours of the closing of the polls. Without authority of law the county clerk had furnished the election officials of said precincts, when he sent out the poll books, with large self-addressed return envelopes with printed instructions thereon, the envelopes being addressed to "The county clerk of Rio Arriba county, Tierra Amarilla, New Mexico", and contained the following instruction in large bold-face type, to-wit: "To judges of election. Place one poll book (2 if there are counting judges) flat in envelope and seal and fasten and mail at once to the county clerk of your county". No one contends that this error in the printed instructions requiring the "mailing" of the

poll books to the county clerk was chargeable to fraud or bad faith on the part of the clerk. It was, obviously, an honest error of the printer, and likewise of the county clerk, in relying upon an old form theretofore used at a time when it was required that such poll books be mailed, rather than delivered, to the clerk. This error was sought to be corrected by both major political parties just immediately prior to the election and when the mistake in such printed instructions was first discovered; but, obviously, notice was not received in all precincts of the county; or at least the confusion caused thereby was not in all cases overcome.

Contestant argues that, in any event, when the election officials selected the U.S. postal service as a "messenger" for the return of the poll books, they selected an appropriate one within the meaning of this statute; that in undertaking to select a messenger, any mistake in such selection, even where it would be impossible in the due course of the mails for the said returns to reach the county clerk's office within 24 hours as provided, which was the case as to all 4 precincts in question, it could, under the circumstances, be an honest mistake of calculation, and, in the absence of fraud, or bad faith, would justify the admission of the returns and their inclusion in the results to be counted by the County Canvassing Board.

Whether the selection of the U.S. mail service as the "messenger" of the election officials, if delivery to the county clerk could have been had within the 24 hour period in the ordinary course of the mails, was proper, is a question we need not decide. It is clear that such service would not be an appropriate messenger if the officials can be charged with knowledge that the returns could not be expected to reach their destination within the 24 hour period, and some other messenger is available to make more prompt delivery. The stipulation upon which we base the facts herein set out does not disclose whether such officials actually knew the course to be taken or time required by the mail going to the county seat. It is stipulated, only, that the returns could not, in the ordinary course of the mails, reach the clerk's office within the time prescribed. But it must be remembered that the county clerk, from whom the election officials had received the ballot box, poll books and supplies in the first instance had, through mistake in the printing of the rules, erroneously directed that the poll books be returned to him by mail. This circumstance, taken with others, all entirely negativing any suggestion of fraud or bad faith, must be given importance when we look for "forces beyond the control" of such officials which would excuse their conduct.

The district judge, when acting upon the application for an order requiring the county canvassing board to accept and consider the returns from these precincts in determining who should receive certificates of elections, found all the facts as above set out; but he concluded that, nevertheless, as a matter of law, he was powerless to

afford relief since he could not hold, within the meaning of the statute, that the errors committed were occasioned by "forces beyond the control of the election officials" rather than through mistake of law. And, likewise, the trial judge in the contest proceeding (this not being the same judge who heard the other matter, incidentally) held that, regardless of the absence of fraud, and notwithstanding all good faith on the part of the precinct election officials, the statute in question denied consideration to the election returns arriving after the 24 hour dead line. Error was committed by both judges, in both circumstances, and the votes from the 4 precincts in question should have received consideration. Had this been done, the Republican candidate, contestant Valdez, would be entitled to the certificate of election, making unnecessary consideration of the several questions raised as to other precincts which would not, now, affect the result.

We cannot accept the reasoning of able counsel for contestee who urges that, notwithstanding what has been said, contestant has had his day in court and we cannot go behind the trial court's holding that such election returns were not delayed in their delivery by "forces beyond the control of the election officials". It will be seen, also, that contestant was not a party to the first proceeding to require the inclusion of the omitted precincts by the County Canvassing Board, if that should become important to notice. The Republican county chairman, and not contestant, invoked the district judge's jurisdiction to compel the acceptance and canvass of the belated returns. The statute provides that any interested party may do so.

■■ It cannot be said that contestant was foreclosed of his remedy to contest the election by anything which transpired prior to the contest even with his knowledge and consent. For the judgment to be binding would require active participation by the parties to be bound (Rice v. Schofield, 9 N.M. 314, 51 P. 673) and due process of law requires notice and opportunity to be heard before being concluded by a judgment. 33 C.J. 1106. Likewise, the mandamus proceeding theretofore instituted, in which contestant was relator, did not foreclose him of the right to further pursue his remedy by contest. For the trial court to deny to contestant, relator in that action, a right to have election officials make a recount of the votes in the precincts in question cannot be said to bar his right to challenge the election of contestee in a statutory election contest in which contestant would be entitled to show that he received the majority of the votes cast for the particular office and was, therefore, elected thereto (1941 Comp. Sec. 56-601). There is no merit to contestee's contention.

It may be conceded that the legislature could, constitutionally, pass a law absolutely prohibiting the canvassing and consideration of any election returns not received at the county clerk's office within a reasonable period of stated time, perhaps even within the period of 24 hours. Yet the

legislature did not choose to invoke a rule so harsh. While the legislature doubtless had in mind the grave abuses that have arisen out of permitting the receipt and canvass of long and unreasonably delayed election returns where the door to fraud was too easily to be opened, it must also have taken into consideration the topography of our state, with its large area, much of it mountainous, the sparse population and with very remote precincts as to many sections of the state, when it enacted the statute in question (56-344 supra). The constitution of the state (Art. 7, sec. 5) provides " * * * the person who receives the highest number of votes for any office shall be declared elected thereto", and by Art. 7, sec. 1, it is provided: "the legislature shall enact such laws as will secure the secrecy of the ballot, purity of elections and guard against abuse of elective franchise".

We will examine most carefully, and rather unsympathetically, any challenge to the right of so large a number of voters to participate in an election before denying that right, absent bad faith, fraud or reasonable opportunity for fraud.

The statute now before us was obviously the result of the careful reflection and studied design of the lawmakers that inexcusable delays in bringing in ballot boxes and election returns would no longer be tolerated, even at the expense, unfortunate as it might be, of denying the franchise in such cases to all the voters of the precinct in question notwithstanding the blame could be charged only to the precinct election officials. But, the language of the statute makes it clear that such delayed returns shall not be denied recognition upon proper showing that forces beyond the control of the election officials caused the delay; and that would be equivalent to saying that, ordinarily, in the absence of fraud or bad faith, and particularly in the absence of any *opportunity* to tamper with the ballots or returns, a reasonably explainable delay should be sufficient to satisfy the district judge that such returns should be accepted. "Forces beyond the control of the election officials" could well be forces which have contributed only to honestly mislead, or misdirect, such officials—even to the point of causing them, under circumstances such as are here present, to mistake the mandate of the law—as any other force, or cause. The "forces" referred to are not necessarily limited to acts of God, or physical forces; and the term has no definite or settled meaning. See Carolina Spruce Co. v. Black Mountain R. Co., 139 Tenn. 137, 201 S.W. 154; Fleuti v. Appledorn, 86 Cal.App. 209, 260 P. 601, 603.

Notwithstanding the purpose to secure "immediate" or "forthwith" delivery of the boxes and returns as indicated by the requirement that this should be done "within twenty-four hours of the close of the polls", the legislature has provided a commendable safeguard against disfranchisement of the voters of such areas by conditionally permitting the canvass of

returns received beyond such twenty-four hour period. We are not prepared to say what would be our holding had substantial opportunity for tampering been afforded by such delay. But here it is conceded that there was no tampering and that the ballots and poll books, excepting as to the tardiness of their return, are wholly unimpeached. The returns of the 4 precincts in question, under the circumstances, should have been accepted and canvassed, and this would have resulted in the election of contestant Valdez.

This is not to say that the discretion of district judges in permitting or denying the consideration of such returns would be lightly disturbed, and every case must, necessarily, rest upon the particular facts and circumstances presented. It is to say, merely, that, under the circumstances of this case, the mandate of the statute is not so stern and unyielding in its exaction as is contended for by contestee and as the learned trial judge erroneously held it to be.

Contestant urges that the statute should, in any event, be held directory and not mandatory; while contestee concedes that this court in a long line of decisions has shown a disposition to be ever zealous "in upholding the effective exercise of the individual's right of franchise to the end that where the language of the statute permitted it has construed statutory provisions as merely directory rather than mandatory"; but, he says, where they are "clearly mandatory * * * it has never hesitated to enforce that mandate even though the votes of honest electors be thereby rendered ineffectual".

Even though we should say that this provision of the statute is mandatory, as we assumed, if we did not decide, in Board of County Comm. of Torrance County v. Chavez, 41 N.M. 300, 67 P.2d 1007, yet there is also a constitutional mandate to which we must yield, that one which says that the person receiving the highest number of votes shall be elected to office; as well as the often announced principle that voters will not be denied their rightful voice in government absent a certain and controlling conflict with a more compelling consideration, that of the public interest to be served in the preservation of the validity of elections.

And, we are also not persuaded that the act of the trial judge in declining to find "forces beyond the control" of the election officials concludes this court. Once the district judge is given this power, which, conceding but not deciding, need not have been given but which could have been denied him by a provision that all election returns reaching the county clerk after the 24 hour period become invalidated absolutely, it cannot be said that this issue, like any other upon which the trial judge passes in ordinary actions cannot be reviewed.

We must thus appraise mandate as against mandate, if there be a conflict. Certainly, the more controlling one is that the voter shall, ordinarily, have his vote recognized and the candidate be given the office to which he is elected if the votes

are cast and returned under such circumstances that it can be said it represents the voice of the majority of the voters participating. And "the election will not be disturbed by reason of technical irregularities in the manner of conducting it or of making the returns thereof * * * ". Wright v. Closson, 29 N.M. 546, 224 P. 483, 485, citing Carabajal v. Lucero, 22 N.M. 30, 158 P. 1088; Montoya v. Ortiz, 24 N.M. 616, 175 P. 335; Gallegos v. Miera, 28 N.M. 565, 215 P. 968.

It is a rule well grounded in justice and reason, and well established by authority and precedent, that the voter shall not be deprived of his rights as an elector either by fraud or the mistake of the election officers if it is possible to prevent it. McCrary on Elections, 4th Ed., Sec., 231. We said in State ex rel. Read v. Crist, 25 N.M. 175, 179 P. 629, 637, "the voter should not lightly be deprived of his right, nor should the successful candidate suffer, if by any reasonable interpretation of the laws governing elections it can be prevented".

Contestant suggests that no state has a statute exactly like our own in the respect in question. He cites the case of Raymer v. Willis, 240 Ky. 634, 42 S.W.2d 918, 920, as a case most in point. There the statute required the delivery "immediately" and "forthwith" of the ballot box to the county clerk. The Kentucky court, speaking through Judge Stanley of the Court of Appeals, construed such words as meaning "without unnecessary delay, or as quickly, as practicable * * * ". And, while it was there held that the discharge of the duty to so act forthwith and immediately was "imperative", it was said each case would rest upon its particular facts, and that where the testimony might be of such a nature as to "indicate a determination to thwart" fairness and honesty in the election "it would be the duty of the courts to condemn it by applying the most rigid rule within their authority". To quote from the Kentucky opinion: "The purpose of the statute was to insure fairness and honesty in elections, and the same should be the motive of each and every officer having duties to perform in the conduct of elections; and, when the testimony is of such a nature as to indicate a determination to thwart that purpose, it would be the duty of courts to condemn it by applying the most rigid rule within their authority. Therefore we repeat that our conclusion on this point in this case is based entirely on its facts, and it would not be applicable under a different state of facts exhibiting a different intent and purpose on the part of those who violated the law, or their associates. * * * We are of the opinion that the integrity of the ballots in the three instances presented here was established, and that the trial court properly considered the returns in the three precincts. We have accordingly done likewise". See also Ward v. Salyer, 283 Ky. 294, 140 S.W.2d 1016, 1020, where the court declined to disfranchise voters of a

county although it was disclosed that the ballot boxes were not equipped with the character of locks required by statute, where the court was satisfied that the "integrity of the ballots has been preserved".

Contestant challenges the trial court's disposition of questions arising in some six other precincts of the county, and contestee, likewise, challenges as error the rejection of votes cast in precincts 31 (La Madera) and 42 (Ciuque) in which two precincts contestee, on the face of the returns, received a majority of 50. But, since contestant will, in any event, be shown to have received a majority of all the votes cast in the county for the office in question when the votes of the 4 precincts which were omitted in the calculation because of delayed delivery of the returns are accepted, it does not become necessary to consider or decide such additional assignments.

And, the question whether appellee properly denied the allegations of contestant's petition, and all other matters presented, in view of the result reached need not be considered. The notice of contest properly raised all questions necessary to decide, at least as they relate to the four precincts, the rejection or reception of the votes of which determines the issue resolved.

It will be noted that more than half of the two year term of the office here in question has elapsed before the right thereto could be decided; and this is to be regretted. Yet, because of the various questions raised in the three separate proceedings first dealt with by the district court before this appeal reached us, requiring of counsel considerable work and elaborate preparation for trial, the delay in the presentation of the case here may be explained if not excused. This court has given priority to a consideration of this appeal and its companion case of Trujillo v. Suazo, 48 N.M. 57, 145 P.2d 871 as is our practice in all cases of general public importance. The matter was not finally submitted to this court until December last. The record before us is voluminous, but able counsel for both sides have afforded the court much aid by their quite exhaustive briefs and through oral argument.

The judgment is reversed with direction to the trial court to set aside its judgment heretofore rendered, to reinstate the cause upon its docket and grant judgment for contestant, who is entitled to the office in question.

And, it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.