649 P.2d 1386

**Paul G. BARDACKE, Plaintiff-Appellee,**

v.

**Thomas L. DUNIGAN,
Defendant-Appellant.**

**No. 14281.**

Supreme Court of New Mexico.

Aug. 27, 1982.

474

Montgomery, Andrews, Edward F. Mitchell, III, Santa Fe, for defendant-appellant.

Sutin, Thayer & Browne, Donald M. Salazar, Santa Fe, for plaintiff-appellee.

Elliot L. Weinreb, Sp. Asst. Atty. Gen., Santa Fe, for real party in interest, Secretary of State.

## OPINION

RIORDAN, Justice.

This action was commenced in the district court by plaintiff-appellee Paul G. Bardacke (Bardacke), a candidate for the Democratic nomination for State Attorney General, challenging defendant-appellant Thomas R. Dunigan's (Dunigan) right to appear on the June primary election ballot for the same office.

On March 2, 1982, Bardacke and Dunigan, along with one other candidate, filed statements of candidacy for convention designation, each seeking the nomination for State Attorney General by the Democratic party. No challenge was filed attacking the number or validity of the signatures on any petitions at that time. At the Democratic party's state convention, Dunigan failed to receive twenty percent of the delegate vote necessary to be placed on the primary ballot as required by Section 1–8–38, N.M.S.A. 1978. On April 12, 1982, in accordance with Section 1–8–39, N.M.S.A. 1978, Dunigan filed additional petitions in an attempt to meet the alternative method of placement on the primary ballot.

After the second group of petitions was filed, Bardacke filed this challenge to Dunigan's petitions claiming that the first and second group of petitions combined did not contain a sufficient number of signatures of registered democrats to qualify him for a position on the primary election ballot.

A hearing on the merits was held before the district court on April 29 and 30, 1982. Judgment was entered for Bardacke; Dunigan appeals. We affirm the trial court.

TIMELINESS OF CHALLENGE

Section 1–8–39 reads in part:

A. Anyone who has been certified by the secretary of state as a candidate for convention designation but does not receive at least twenty percent of the delegate vote may have his name printed on the primary election ballot as a candidate for that office provided that no later than fifty days before the primary election he shall file a declaration of candidacy and nominating petitions in the form prescribed by Section 1–8–30 NMSA 1978 containing:

(1) the signatures of voters totaling not less than one percent in each of ten counties with a total of three percent statewide of the total number of votes cast in the state by that party for governor in the last preceding primary election at which the party's candidate for governor was nominated in the case of a candidate for statewide office. * * *

B. The secretary of state shall determine whether the nominating petitions and signatures conform to the provisions of Subsection E of Section 1–8–30 NMSA 1978.

When Dunigan filed his second group of petitions with the Secretary of State, 157 signatures were invalidated by the Secretary of State for nonconformity with Section 1–8–30(E), N.M.S.A. 1978, which provides:

The signature of voter shall not be counted unless the entire line is filled out in full and is upon the form prescribed by the Primary Election Law.

Both parties agree that the Secretary of State fully and faithfully performed her duties in striking those 157 signatures. The parties also agree that 150,766 votes were cast in the Democratic gubernatorial pri-

mary in 1978. Three percent of that number is 4,523 which, under Section 1–8–39(A)(1), was the number of valid signatures needed by Dunigan to be placed on the primary election ballot. Dunigan filed 3,818 signatures in March and an additional 927 signatures in April after failing to get the party convention designation, for a total of 4,745 signatures. (This number does not include the 157 signatures invalidated by the Secretary of State.) Thus, before Bardacke's challenge, Dunigan had an excess of 222 signatures necessary for placement on the primary ballot. ·

Bardacke claimed that 625 signatures did not conform with the rules set forth in Section 1–8–31, N.M.S.A. 1978 (Cum. Supp. 1981), which reads as follows:

A. Each signer of a nominating petition shall sign but one petition for the same office unless more than one candidate is to be elected to such office, and in that case not more than the number of nominating petitions equal to the number of candidates to be elected to the office shall be signed.

B. A signature shall be counted on a nominating petition unless there is evidence presented that the person signing:

(1) is not a voter of the state, district, county or area to be represented by the office for which the person seeking the nomination is a candidate;

(2) has signed more than one petition for the same office, except as provided in Subsection A of this section, or has signed one petition more than once;

(3) is not of the same political party as the candidate named in the nominating petition as shown by the signer's affidavit of registration; or

(4) is not the person whose name appears on the nominating petition.

In accordance with this Section, the district court found that of the 429 signers Bardacke claimed were not registered democrats, 357 signatures should be stricken; that all 120 signatures of signers claimed to be registered republicans should be stricken; that 33 signatures of voters who had signed the petitions more than once should

be stricken; and that 35 signatures should be stricken for having appeared on more than one of the three candidates nominating petitions. (The court allowed each of these last two categories to be counted once.) The district court struck a total of 545 names out of the 625 that Bardacke challenged as invalid. Dunigan was left with only 4,200 valid signatures, 323 less than required by Section 1–8–39(A)(1).

On appeal, Dunigan argues that the 3,818 signatures filed by him on March 2 were not subject to challenge because, under Section 1–8–35(A), N.M.S.A. 1978, they were not challenged within the statutory period and, there being no evidence as to whether the disqualified signatures were taken from the first or second group of petitions, the district court's decision must be reversed.

Section 1–8–35(A) reads in part:

Any voter filing any court action challenging a nominating petition provided for in the Primary Election Law [1–8–10 to 1–8–52 NMSA 1978] shall do so within ten days after the last date for filing a declaration of candidacy *or* statement of candidacy for convention designation. * * [Emphasis added.]

■ It is undisputed that after he failed to receive the convention designation, Dunigan filed a *declaration of candidacy* on April 12, 1982, in which he relied on the signatures contained in the petitions filed on March 1982 to reach the number of signatures needed to be placed on the ballot. Bardacke filed his challenge to the sufficiency of the number of signatures on Dunigan's nominating petitions on April 21, 1982. The plain language of Section 1–8–35(A) allows a challenge within 10 days of filing *either* a statement of convention designation (if a voter wishes to disqualify a candidate before the convention) or within 10 days of filing a declaration of candidacy after the convention. A *declaration of candidacy* requires that the number of signatures necessary for placement on the primary ballot be equal to three percent of the total number of votes cast in the last primary for governor. If, when filing a declaration of candidacy, the candidate relies on

the signatures previously filed for convention designation to meet that three percent requirement (as Dunigan did in this case), then the signatures are subject to challenge. We agree that the signatures on the petitions filed with the statement for convention designation should be added to those accompanying the declaration of candidacy in determining whether the three percent requirement has been met. *See* 1975 Op. Att'y Gen. No. 75–61. It is apparent to us that the legislature intended that the signatures be aggregated and refiled with the second group of petitions in order to meet the statutory requirement and that they should be subject to challenge upon such refiling.

## SUFFICIENCY OF THE EVIDENCE

■ Dunigan also claims that the evidence offered by Bardacke in support of his challenge is insufficient. In order to verify the signatures on Dunigan's petitions, Bardacke enlisted persons to go to county clerks offices throughout the state to check the signatures on the voter registration records of all the persons who signed Dunigan's petitions. After determining which signatures were not in the records, the Bardacke investigators obtained sworn statements from the various county clerks certifying that upon diligent search, no voter registration records could be found for the persons named in the certificates. Each certificate was signed by the county clerk, or his or her deputy, and the county seal was affixed thereon. The certificates are considered self-authenticating documents under N.M.R. Evid. 902(1), N.M.S.A. 1978. Dunigan did not object to their authenticity. The various certificates showed a total of 549 invalid signatures. The district court allowed the certifications in evidence under N.M.R. Evid. 803(10), N.M.S.A. 1978 (Cum. Supp. 1981), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> *     *     *     *     *     *
>
> (10) *To prove the absence of a record,* report, statement or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement or data compilation, in any form, was regularly made and preserved by a public office or agency, *evidence in the form of a certification in accordance with Rule 902, or testimony, that diligent search failed to disclose the record, report, statement or data compilation, or entry.* [Emphasis added.]

After hearing all the evidence, the district court found that, with the exception of 72 names, the certificates were sufficiently reliable and trustworthy to establish that the names listed thereon were the names of persons who were not entitled to be counted under Section 1–8–31. Dunigan failed to offer any further evidence regarding the accuracy of the certificates. Thus, the names that went unchallenged by Dunigan and found by the district court to be invalid, a total of 477 signatures, are conclusively invalid. Dunigan has not properly challenged the district court's findings or made any attempt to show that the evidence supporting those findings is insubstantial, except to say that because 72 out of 549 signatures were subsequently found to be valid, therefore, the trustworthiness of those certificates should questioned. We cannot agree. The certificates offered adequate and substantial evidence that of the 549 names contained in the clerk's affidavits, 477 were not registered voters. *See Brutsche v. C.I.R.*, 585 F.2d 436 (10th Cir. 1978). This Court will not overturn the district court's determination in this regard because where the trial court's findings are determined to be supported by substantial evidence, they will be affirmed. *Cave v. Cave*, 81 N.M. 797, 474 P.2d 480 (1970).

## INTERPRETATION OF THE ELECTION LAWS

■ Dunigan further alleges that the New Mexico Election Code, Sections 1–1–1 through 1–21–14, N.M.S.A. 1978 (Orig. Pamp. and Cum. Supp. 1981), should be liberally construed so as to afford easy access to the primary ballots in New Mexico primary elections. In support of his claim, Dunigan cites various New Mexico cases,

the principal case being *Valdez v. Herrera,* 48 N.M. 45, 145 P.2d 864 (1944). *Valdez* and other cases cited by Dunigan dealt with a situation in which large numbers of validly registered voters who had cast their votes on election day faced disenfranchisement due to honest errors made by election officials. In each instance the Court held that where strict interpretation of the election laws threatened the large-scale disenfranchisement of voters, such interpretation should fall to a more liberal approach.

However, in the instant case we are not faced with such an occurrence. No one registered and qualified to vote has been or will be denied his/her right to vote for any duly nominated candidate. The will of the majority of voters will not be hampered in any way.

In an effort to protect the public from the undesirable effects of an unrestrained nominating process, the legislature has seen fit to place certain requirements on the amount of public support a potential candidate must demonstrate before being placed on the ballot. Other candidates have managed to muster the required amount of support in the past. There is no reason to suspect that these requirements are unreasonable.

Dunigan simply failed to meet those requirements. There is no justification for modifying them now so as to grant a candidate a ballot position to which he is not entitled under New Mexico law.

For the above reasons, the judgment of the district court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.