144 P.2d 157

## FIDELITY & DEPOSIT CO. OF MARYLAND v. ATHERTON et al.

No. 4689.

Supreme Court of New Mexico.

Dec. 8, 1943.

Rehearing Denied Jan. 12, 1944.

Hanna, Wilson & Brophy, of Albuquerque, for appellant.

Kiker & Sanchez, of Santa Fe, for appellees.

BRICE, Justice.

The questions are: (1) Whether the appellant (plaintiff below), who as surety upon the official bond of the treasurer of Bernalillo County, paid the shortage of a defaulting deputy county treasurer, is subrogated to the county's rights and remedies (if any) against the appellees Horton & Bixler (hereafter referred to as appellees), whose negligence as public accountants (it is charged) was the proximate cause of the loss; and (2) should appellees be required to pay appellant, whose loss has been partially paid and the balance well secured, by the county treasurer who is the principal debtor?

The appellees demurred to appellant's complaint, asserting that it did not state a cause of action. The demurrer was overruled and thereafter appellee answered. This action of the court is assigned as error, but we are of the opinion that the trial court did not err in overruling the demur-

rer. Our reasons therefor will sufficiently appear from a determination of the merits of the case.

The facts as found by the trial court, material to a decision, are as follows:

The appellees, a co-partnership, are certified public accountants. They entered into a written contract with Bernalillo County, wherein they agreed for considerations named, to conduct a continuous audit of the books and records of account of Bernalillo County and to act as consulting accountants for the period from July 1, 1936, to and including June 30, 1937; to furnish to the appellee Board of County Commissioners (hereafter called the Board), upon demand, a certified statement of cash receipts and disbursements of the county treasurer from July 1, 1936 to and including June 30, 1937; to prepare typewritten reports of a final audit for the period ending June 30, 1937; to meet with the Board at least once a month and furnish it the balances to the credit of the various funds over which the Board had control and against which it could draw warrants; to place accountants on the assignment who were skilled and experienced in municipal accounting; to make audits in conformity with existing laws, and render reports as required by the Board, and—"Party of the Second Part agrees to furnish evidence to the Board of County Commissioners and to file evidence with the County Clerk, indicating that the County will be protected for the faithful performance of the terms of this agreement, and also protected against defalca-

tions or other misdeeds of employees of Party of the Second Part, such evidence being a blanket accountant's Liability Policy of $60,000.00—34682-K American Surety Company of New York, protecting all clients of Party of the Second Part. This above Policy expires June 1, 1937."

This contract was extended by agreement of the parties to June 30, 1938. During the existence of this contract David J. Armijo was the county treasurer of Bernalillo County and the appellant surety on his official bond, payble to the State of New Mexico and conditioned that he would well and faithfully perform his duties as county treasurer; that he would render true accounts of his office and pay over all monies that might come into his hands by virtue of his office to the persons authorized to receive the same by law, and carefully keep and preserve all books and papers and other property pertaining to his office and deliver them to his successor.

Virgil G. Webster was deputy county treasurer, and he as principal, and the appellant as his surety, executed a bond for $10,000 payable to the State of New Mexico, conditioned substantially as that of the treasurer's bond. This bond was not required by law, and was executed for the protection of the county treasurer as against his deputy.

From the period of July 1, 1937, to January 22, 1938, deputy county treasurer Webster embezzled from the treasurer's office funds aggregating $21,611.57. The appellant paid to county treasurer Armijo $10,-

000 as surety on his deputy's bond, which sum of money was delivered back to it, and appellant thereupon paid to the county of Bernalillo the total amount of the defalcation.

After endorsing to appellant the $10,000 check received from it, treasurer Armijo executed and delivered to appellant his promissory note in the principal sum of $11,611.57 (the balance due the County by treasurer Armijo) secured by a mortgage on certain real estate, the value of which is ample security for the payment of the note, and much in excess of the principal sum thereof. Thereafter treasurer Armijo paid to appellant on that note sums aggregating $3,393.43. No effort has been made by appellant to enforce collection of this indebtedness, although long past due.

The duties of the treasurer of Bernalillo County required him to and he did collect monies for payment of taxes upon real and personal property in said county as well as to collect and receive other monies due said county.

In the collection of tax monies by the county treasurer of Bernalillo County, at all times material, the method and procedure used was as follows: Upon receipt of the tax rolls from the county assessor, the county treasurer prepared a form of tax receipt in triplicate, in white, blue and pink, for each taxpayer shown on the tax rolls. These receipts were numbered consecutively and bound in books each containing one hundred receipts, not dated or signed by the treasurer at the time of their preparation. The blue and pink sheets were carbon impressions of the white sheet made at the same time as the white sheet was typed. The white and blue receipts were perforated, permitting them to be torn out of the tax receipt book. When taxes were paid the receipts were signed in triplicate by the treasurer or his employee and the date of payment was inserted. The white receipt was then delivered to the taxpayer, the blue receipt was removed from the receipt book and retained by the treasurer. The pink receipt was not perforated for tearing out of the bound book, and it remained in the receipt book after the taxes were paid. It was a permanent record of the cash received.

Appellees each month sent their employee to the County Treasurer's office to audit the books and records of account of the treasurer, and to prepare data for quarterly and annual audit reports, required to be made under the auditing contract. They compared the blue receipts and the adding machine tapes which then remained in the treasurer's office with the entries in the tax cash record and the cash journal; totaled the amounts in the tax cash record and the tax cash journal and checked the distributions to the various funds in the tax cash journal.

The pink receipts were permanently bound records of the treasurer's office containing a record of the actual cash received by the treasurer from taxes.

The tax cash record book and the tax cash journal kept during 1937 did not contain any details showing the name of the taxpayer who paid taxes, the number of the receipt issued to the taxpayer, or the amount of money for which each receipt was issued, but only the total sum received daily as shown by the entries purporting to have been made by the bookkeeper from the blue receipts which ostensibly remained available in the treasurer's office. The books did not contain entries showing any money received upon blue receipts which had been lost or destroyed.

Appellees did not test check any of the pink receipts by comparing them with the available blue receipts or the tax cash record or the tax cash journal, or the tax roll at any time prior to January 1, 1938, to determine whether or not all cash received by the county treasurer for which tax receipts were issued and for which pink receipts remained had been accounted for in the tax cash record and the tax cash journal, and did not at any time during 1937 check the pink receipts in the bound volume against the blue receipts available in the treasurer's office or against the tax rolls, or against the tax cash record or against the tax cash journal.

Between January 1, 1937, and January 22, 1938, during which time the audit contract was in force, deputy treasurer Webster embezzled from monies collected for taxes $21,176.20, and $435.28 from other monies received in the treasurer's office. To cover this defalcation Webster destroyed the blue receipts equal in amount to the funds embezzled, and made new adding machine tapes to correspond with the amount received less the amount embezzled. As the amounts evidenced by the blue receipts destroyed were not entered in the cash record or the tax cash journal, the amounts of the retained receipts corresponded with those evidenced by these records and the adding machine tape.

Appellees did not check the pink receipts nor begin the special investigation agreed upon, in September, 1937, at any time during 1937, but commenced work thereunder on January 1, 1938, to ascertain if there was any shortage in the treasurer's office.

The trial court concluded that appellees were not negligent in the performance of their contract with the county of Bernalillo; and they "did not cause, or contribute to the cause of, any loss sustained by the plaintiff."

The appellees assert that the complaint does not state a cause of action; that as the State of New Mexico is the obligee named in the bond, it is an indispensable party to the action; that as there was no privity of contract between appellees and appellant it could not be subrogated to the rights and remedies (if any) of the county of Bernalillo; that mere actionable negligence resulting from the breach of a contract creates no right to subrogation in favor of one who is neither a party nor a privy to the contract. These questions for the purpose of this suit only will be resolved in favor of the appellant. The

writer is of the opinion that these assumptions are legally correct, but this is not necessarily the view of any other member of the court, and the questions are not decided.

 Subrogation is not necessarily founded upon contract. Crippen v. Chappel, 35 Kan. 495, 11 P. 453, 57 Am.Rep. 187; Fourth Nat. Bank v. Board of Com'rs of Craig County, 186 Okl. 102, 95 P.2d 878. It is an equitable remedy of civil law origin whereby through a supposed succession to the legal rights of another, a loss is put ultimately on that one who in equity and good conscience should pay it. American Surety Co. of New York v. Robinson, 5 Cir., 53 F.2d 22, 23; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510. It is a remedy for the benefit of one secondarily liable, who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor, Andrew v. Bevington Sav. Bank, 206 Iowa 869, 221 N.W. 668.

Treasurer Armijo was primarily liable to the county for his deputy's defalcation. He paid $10,000 which was paid to him by appellant as surety on his unfaithful deputy's official bond. True, the appellant's check to Armijo was endorsed by him, returned to appellant and delivered to the county; but it was Armijo's money and he, not appellant, paid the county the $10,000. The balance of $11,611.57 was paid to the county by appellant, of which amount Armijo has repaid $3,393.43, and appellant has accepted Armijo's note secured by a mortgage on property the value of which is much in excess of the debt, which, though long past due, appellant has made no effort to collect.

 If, in equity and good conscience, the appellees, under any circumstances, should pay this debt (a question we do not decide), they should not be required to do so under the facts stated. The appellant has refused to enforce collection of the amount due it from the treasurer Armijo, who is primarily liable therefor, and the collection of which could be enforced if not paid upon demand.

 We do not hold that a surety who has paid his principal's obligation is not ordinarily entitled to be subrogated to all rights and remedies of the insured, including those based upon ordinary negligence; we do not decide the question; but see United States F. & G. Co. v. Citizens' Nat. Bank, D.C., N.M., 13 F.2d 213; Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 95 A.L.R. 258; Maryland Casualty Co. v. Cook, D. C., Mich., 35 F.Supp. 160; Fourth Nat. Bank v. Board of Com'rs, 186 Okl. 102, 95 P.2d 878; Martin v. Federal Surety Co., 8 Cir., 58 F.2d 79. We do hold that where, as in this case, the surety has been paid approximately two-thirds of its outlay by the principal debtor, and has accepted for the balance its principal's note, so well secured that there can be no question of ultimate payment, which it refuses to enforce, it would be inequitable to require a third person to pay it.

No general rule can be laid down which will afford a test in every case in which subrogation is sought. The underlying principle is that the right flows from principles of justice and equity. Every case depends upon its particular facts, and we can see no reason in equity or justice to require a third person to pay this particular debt with such a background of facts. Richardson v. American Surety Co., 97 Okl. 264, 223 P. 389; American Surety Co. v. Citizens' Nat. Bank of Roswell, D.C., N.M., 294 F. 609.

The appellees owed to the board of county commissioners a legal duty to make their reports without fraud, and a contractual duty to make them, under the terms of their contract, with the care and caution required of experts. They likewise owed a duty to third persons, if any, to whom they knew, or reasonably should have known, their employer intended to exhibit their reports, and upon which they might act to their injury, to make such reports without fraud. But there is no finding that appellees made a fraudulent report, or of a reliance upon appellees' report by either the appellant or Armijo, nor, of course, that they, or either of them, was injured by such reliance, so as to bring the case within the doctrine of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139.

We are entirely satisfied that appellant could have collected from Armijo the balance due it, without the necessity of a suit, and certainly with much less trouble and expense than it has incurred in this proceeding against appellees. Its negligence in failing or refusing to collect from Armijo does not appeal to this court as a reason for requiring third persons to pay the debt.

It should be stated in behalf of the appellees that the trial court found that they performed their contract; that they were not negligent, and that no act or default of theirs caused or contributed to the loss of the county's funds.

The decree of the district court should be affirmed, and it is so ordered.

SADLER, C. J., and MABRY, J., concur.

BICKLEY and THREET, JJ., concur in result.