176 P.2d 173

**VALDEZ v. GONZALES et al.**

No. 4924.

Supreme Court of New Mexico.

Dec. 31, 1946.

Manuel A. Sanchez, of Santa Fe, for appellant.

C. C. McCulloh, Atty. Gen., and Robert W. Ward, Asst. Atty. Gen., for Jessie M. Gonzales.

Seth and Montgomery of Santa Fe, for Madrid & U. S. F. & G. Co.

Rodey, Dickason & Sloan and Frank Mims, all of Albuquerque, for New Amsterdam Casualty Co.

HUDSPETH, Justice.

Appellant Tito Valdez, a candidate for public office, commenced this action as plaintiff against appellees, Jessie M. Gonzales, Secretary of the State of New Mexico, Gaby B. Madrid, County Clerk of Rio Arriba County, New Mexico, and the sureties on their official bonds as defendants to recover damages for negligent printing and delivering of false instructions to precinct election judges.

Motions to dismiss upon the grounds that the complaint did not state facts sufficient to constitute a cause of action were sustained and this appeal followed. The facts are substantially as follows:

The plaintiff was a candidate for the office of county school superintendent of Rio Arriba County, New Mexico, at the general election of 1942. At that time and until January 1 thereafter the defendant Gonzales was the Secretary of State of New Mexico, and the defendant Madrid was the County Clerk of Rio Arriba County, New Mexico. The clerk was charged by law with the duty of delivering to the precinct election officials in Rio Arriba County, supplies and instructions for the conducting of the election in each election precinct. The secretary of state prepared and delivered to the clerk, as part of the election supplies, instructions to voters, and poll books on which were printed instructions to the precinct election officials regarding their duties. (N.M.S.A. 1941 Comp., Sec. 56-319). Among these instructions were the following:

"INSTRUCTIONS TO ELECTION OFFICERS" and above these instructions is printed in as large type as space will permit:

"DO NOT FAIL TO READ ALOUD INSTRUCTIONS INSIDE"

Instructions numbers one and four are as follows:

"READ INSTRUCTIONS ALOUD
1. Read aloud to all election officers these instructions and instructions to voters on cards, furnished you by the County

Clerk, before opening the polls for voting.
* * *

CHECK ELECTION SUPPLIES

"4. Inspect and see that you have the necessary election supplies, consisting of:" (here follows a list of necessary election supplies, but an envelope for mailing the poll books to the county clerk is not mentioned.)

"DISPOSITION OF POLL BOOKS, ETC.

27. Return ballot box immediately to the county clerk. The person delivering the ballot box should also take with him for delivery to said county clerk, not enclosed in the ballot box, one key in an envelope addressed to said clerk, one poll book certified by the judges of election, the bound book of affidavits of registration, and all unused election supplies. Where there are counting judges, said person should also take with him one poll book certified by the counting judges. Place in the mailing tube furnished the other poll book, or other two poll books where there are counting judges, and mail to the secretary of state at Santa Fe. Place the other key in an envelope addressed to the district judge, and mail the same." ·

"BALLOT BOXES MUST BE DELIVERED WITHIN TWENTY-FOUR HOURS

28. If the voting place is not more than twenty-five miles from the county seat, the ballot box, key, poll book, etc., shall be delivered forthwith to the county clerk by one or more judges of election in person; if a greater distance, by messenger selected by the judges of election for that purpose. Where any ballot box, any poll book, or registration book, are not delivered in accordance with these instructions within twenty-four hours of the close of the polls, the vote in that precinct shall not be counted or canvassed unless a petition is presented to the district judge of the district within which such precinct is contained and a sufficient showing made that the delay was due to forces beyond the control of the election officials, and then only when said district judge shall so find and make an order that the votes cast in said precinct shall be canvassed and become part of the final election result."

"PENALTIES

31. Wilful disobedience to the law by an election officer will subject him to heavy penalties.

"WARNING

32. Failure to follow the foregoing instructions may result in the rejection of the entire vote in your voting division. These instructions must be followed carefully."

The Secretary of State, without authority of law, sent with the poll books envelopes on each of which was printed in large letters the following: "To judges of election: Place one poll book (two if there are

counting judges) flat in the envelope and seal and fasten and mail at once to the county clerk of your county." One of these envelopes with the usual election supplies was delivered by the clerk to the election officials of each election precinct, prior to the date fixed by law for holding the election. The election officials of each of three precincts in Rio Arriba County placed its poll book in the envelope described and mailed it to the County Clerk of Rio Arriba County as thereon instructed. In the regular course of mail the poll books could not, and did not, reach the County Clerk's office within 24 hours after the closing of the polls on election day.

In each of the precincts mentioned the plaintiff received a substantial majority of votes over his opponent; and received a majority of the votes cast in Rio Arriba County. But because the returns were delayed more than 24 hours after the close of the polls, the county canvassing board refused to canvass and count the votes cast in the three precincts mentioned, with the result that the certificate of election for plaintiff's office was issued to the plaintiff's opponent Bernabe Herrera. If the ballots cast in the three precincts had been canvassed and counted the plaintiff would have received the certificate, and subsequent delays and litigation would have been avoided.

A proceeding was instituted in the District Court of Rio Arriba County to require the canvassing board to count the ballots cast in the three precincts, notwithstanding they were delayed more than 24 hours, but the District Court erroneously ruled that the ballots should not be counted.

Thereafter the plaintiff filed a statutory contest, in which the decisive question was whether the ballots in the boxes mentioned should be canvassed and counted; which question the district court answered in the negative; and judgment was entered for contestee Herrera. An appeal from this judgment was prosecuted to the Supreme Court, and on February 28, 1944, a decision was therein rendered (Valdez v. Herrera, 48 N.M. 45, 145 P.2d 864) by which the judgment below was reversed, with instructions to the district court to render its judgment for plaintiff. He took possession of the office on March 1, 1944.

Plaintiff exercised all possible diligence in all proceedings to secure title to and possession of the office to which he had been elected; but notwithstanding such diligence he was deprived of his office from January 1, 1943 to March 1, 1944. While in possession of plaintiff's office the contestee Herrera received $2,916.67 of its emoluments, and the costs of court paid by the plaintiff were $132, for all of which plaintiff obtained judgment against the contestee Herrera. An execution was issued thereon and returned nulla bona, and subsequently contestee Herrera filed bankruptcy proceed-

ings, from which nothing can be realized on the plaintiff's claim.

It is asserted by the plaintiff that all of the defendants are liable to plaintiff for damages sustained by him, to wit, the sum of $3,048.67, with interest at six per cent per annum from February 28, 1944, until paid.

One of the grounds on which the motions to dismiss was sustained is that the defendant officers were not liable in damages to third persons for their negligence.

 While envelopes for poll books are not listed among the supplies there could have been no objection to including blank envelopes to be used for the purpose of enclosing the poll books. In fact, the poll books should be securely enveloped and sealed before they are turned over to messengers for delivery to the County Clerk. So the negligence consisted of words—instructions to the judges of election to mail the poll books—contrary to the statutory instructions printed in the poll books, and quoted above.

There is no contract liability to third parties. 1 Restatement of the Law of Contracts, Sec. 145, and there is no allegation of fraud or intentional wrong in plaintiff's complaint. 4 Restatement of the Law of Torts, Sec. 865, reads as follows: "Interference with a Right to Vote or Hold Office. A person who by a consciously wrongful act intentionally deprives another of a right to vote in a public election or to hold public office is liable to the other in an action of tort."

Assuming that the defendant officers owed a duty to these election officials, the presence of that duty to use care depended upon the relation of the parties. Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp., 245 N.Y. 377, 157 N.E. 272, 56 A.L.R. 1186.

A question of the liability for negligent language to third persons was involved in the case of Fidelity & Deposit Co. of Maryland v. Atherton, 47 N.M. 443, 144 P.2d 157, 161, where we said: "The appellees owed to the board of county commissioners a legal duty to make their reports without fraud, and a contractual duty to make them, under the terms of their contract, with the care and caution required of experts. They likewise owed a duty to third persons, if any, to whom they knew, or reasonably should have known, their employer intended to exhibit their reports, and upon which they might act to their injury, to make such reports without fraud. But there is no finding that appellees made a fraudulent report, or of a reliance upon appellees' report by either the appellant or Armijo, nor, of course, that they, or either of them, was injured by such reliance, so as to bring the case within the doctrine of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139."

Ultramares Corporation v. Touche, supra, is the leading case on the subject of liability for negligent language. In the unanimous opinion of the court Chief Justice Cardozo stated [255 N.Y. 170, 174 N.E. 445]:

"The assault upon the citadel of privity is proceeding in these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion. Williston, Liability for Honest Misrepresentation, 24 Harv.L.Rev. 415, 433; Bohlen, Studies in the Law of Torts, pp. 150, 151; Bohlen, Misrepresentation as Deceit, Negligence or Warranty, 42 Harv.L.Rev. 733; Smith, Liability for Negligent Language, 14 Harv. L.Rev. 184; Green, Judge and Jury, chapter Deceit, p. 280; 16 Va.Law Rev. 749. In the field of the law of contract there has been a gradual widening of the doctrine of Lawrence v. Fox, 20 N.Y. 268, until today the beneficiary of a promise, clearly designated as such, is seldom left without a remedy. Seaver v. Ransom, 224 N.Y. 233, 238, 120 N.E. 639, 2 A.L.R. 1187. Even in that field, however, the remedy is narrower where the beneficiaries of the promise are indeterminate or general. Something more must then appear than an intention that the promise shall redound to the benefit of the public or to that of a class of indefinite extension. The promise must be such as to 'bespeak the assumption of a duty to make repara-tion directly to the individual members of the public if the benefit is lost.' Moch Co. v. Rennsselaer Water Co., 247 N.Y. 160, 164, 159 N.E. 896, 897, 62 A.L.R. 1199; American Law Institute, Restatement of the Law of Contracts, § 145. * * *

"We are now asked to say that a like liability attaches to the circulation of a thought or a release of the explosive power resident in words.

"Three cases in this court are said by the plaintiff to have committed us to the doctrine that words, written or oral, if negligently published with the expectation that the reader or listener will transmit them to another, will lay a basis for liability though privity be lacking. These are Glanzer v. Shepard, 233 N.Y. 236, 238, 135 N.E. 275, 23 A.L.R. 1425; International Products Co. v. Erie R. R. Co., 244 N.Y. 331, 155 N.E. 662, 56 A.L.R. 1377, and Doyle v. Chatham & Phenix Nat. Bank, 253 N.Y. 369, 171 N.E. 574, [71 A.L.R. 1405.] * * *

"From the foregoing analysis the conclusion is, we think, inevitable that nothing in our previous decisions commits us to a holding of liability for negligence in the circumstances of the case at hand, and that such liability, if recognized, will be an extension of the principle of those decisions to different conditions, even if more or less analogous. The question then is whether such an extension shall be made.

"The extension, if made, will so expand the field of liability for negligent speech as to make it nearly, if not quite, coterminous with that of liability for fraud. Again and again, in decisions of this court, the bounds of this latter liability have been set up, with futility the fate of every endeavor to dislodge them. * * *

"Liability for negligence if adjudged in this case will extend to many callings other than an auditor's. Lawyers who certify their opinion as to the validity of municipal or corporate bonds, with knowledge that the opinion will be brought to the notice of the public, will become liable to the investors, if they have overlooked a statute or a decision, to the same extent as if the controversy were one between client and adviser. * * *

" 'The assumption of one relation will mean the involuntary assumption of a series of new relations, inescapably hooked together' Moch Co. v. Rensselaer Water Co., supra, at page 168 of 247 N.Y., 159 N.E. 896, 899. 'The law does not spread its protection so far' Robins Dry Dock & Repair Co. v. Flint, supra, at page 309 of 275 U.S., 48 S.Ct. 134, 135 [72 L.Ed. 290]."

See also State Street Trust Co. v. Ernst, 278 N.Y. 104, 15 N.E.2d 416, 120 A.L.R. 1250, and O'Connor v. Ludlam, 2 Cir., 92 F.2d 50. Vol. I, Shearman and Redfield on Negligence, Sec. 30, says:

"A negligent statement, whether spoken or written, may be the basis for a recovery of damages. Not every casual response, not every idle word, however damaging the result, gives rise to a cause of action. Liability arises when the person furnishing information owes a duty to give it with care and the person receiving it has a right to rely and act upon it and does so to his damage. * * *

"The foregoing presents the American as distinguished from the contrary English rule. Under the latter 'there is no such thing as liability for negligence in word as distinguished from act.' " * * *

"In the absence of a duty, resting upon the party sought to be charged by reason of a contractual relation or something in the nature of an equivalent to privity, negligent words are not actionable. * * *

"The service was primarily for the benefit of the employer, and only incidentally or collaterally for the use of such others. There was no 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.' (Citing Ultramares Corp. v. Touche, supra.)

"The court in the last cited case recognizes a distinct need that liability for negligent language be kept within reasonable limitations. Some such restrictive idea might well be applied to the entire field of negligence. The trend toward increasing liability should be checked."

Another ground on which the motion to dismiss was sustained is that the negligence complained of was not the proximate cause of plaintiff's injury. It merely furnished the condition under which the injury was received but did not put in motion the agency by which the injury was inflicted. 38 Am.Jur. p. 702, General American Life Ins. Co. v. Stadiem et al., 223 N. C. 49, 25 S.E.2d 202; Briske v. Village of Burnham, 379 Ill. 193, 39 N.E.2d 976; Annotation 64 A.L.R. 519. That was the act of the precinct judges of election who mailed the envelopes containing the poll books instead of delivering them by messenger, as the law and instructions printed in the poll books provided.

The "forseeability" rule has long prevailed in this state. Lutz v. Atlantic & Pacific R. Co., 6 N.M. 496, 30 P. 912, 16 L.R.A. 819; Reif v. Morrison, 44 N.M. 201, 100 P.2d 229. "Unless the tort is willful, the wrongdoer is liable only for such consequences as were or should have been contemplated or might have been foreseen." 25 C.J.S., Damages § 25, p. 488.

Should the defendant officers have foreseen that the district court would make an erroneous ruling on the question as to whether the ballots in the boxes from the three precincts should be counted? We think not. The defendant officials had the right to indulge the same presumption that the bench and bar do, namely, that the judge would perform his duty properly. Carini v. Beaven, Roman Catholic Bishop of Springfield, 219 Mass. 117, 106 N.E. 589, L.R.A.1915B 825. Counsel for plaintiff argues that the trial court could not say, as a matter of law, that plaintiff's loss was not the proximate result of the defendant officers' negligence. The case seems to come within the rule stated in Vol. 1 Cooley on Torts (4th Ed.) p. 121, as follows: "But where the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable men, it is the duty of the court to determine the question as a matter of law."

Other points are argued, but in view of our conclusion it will not be necessary to consider them.

Finding no error, the judgment of the district court will be affirmed.

It is so ordered.

SADLER, C. J., and BICKLEY, and LUJAN, JJ., concur.

BRICE, J., dissenting.

BRICE, Justice (dissenting).

As I understand the majority opinion, it is held that (1) there was no contractual liability to plaintiff and therefore defendants were liable only in case of fraud or intentional wrong, and (2) that the acts of defendants were not the proximate cause of plaintiff's injury.

The several motions to dismiss, made by the respective defendants, were sustained by the trial court upon the following grounds:

"First: The complaint herein should be dismissed as to the defendants herein because the obligee named in said bonds is the State of New Mexico, and the Court rules that no action can be maintained on such official bonds other than by the obligee in the absence of statutory authority.

"Second: That the actions of neither of the defendants, Gaby B. Madrid nor Jessie M. Gonzales, were the proximate cause of the plaintiff's alleged damages complained of.

"Third: That the defendants, Jessie M. Gonzales and Gaby B. Madrid, could not have reasonably foreseen that any injury would result from the printing of improper instructions upon the mailing envelopes" for reasons hereinafter stated.

"Fourth: The complaint fails to allege any statutory duty resting upon the said Gaby B. Madrid or Jessie M. Gonzales affording plaintiff a right of action against said defendants, or either or them, in the absence of any allegation of malice, dishonesty, or wilfulness on the part of said public officials.

"Fifth: Under the allegations of the complaint and the laws of New Mexico, there is no liability against the said Gaby B. Madrid by reason of her having delivered election supplies prepared and furnished by the Secretary of State as alleged in the complaint."

The Secretary of State is required, at least three months prior to an election, to have poll books printed and to send each county clerk a sufficient number of them for use in holding elections in the several voting precincts and election districts of his county. (Sec. 56-312). In each poll book is printed: "INSTRUCTIONS TO ELECTION OFFICERS" and above these instructions is printed in as large type as space will permit:

"DO NOT FAIL TO READ ALOUD INSTRUCTIONS INSIDE"

Instructions numbers one and four are as follows:

"READ INSTRUCTIONS ALOUD.

1. Read aloud to all elections officers these instructions and instructions to voters on cards furnished you by the county clerk, before opening the polls for voting. * * *

"CHECK ELECTION SUPPLIES.

4. Inspect And See That You Have The Necessary Election Supplies Consisting Of:" (here follows a list of necessary election supplies, but an envelope for mailing the poll books to the county clerk is not mentioned.)

The only supplies which the Secretary of State is authorized to furnish the county clerks for distribution are cards on which is printed instructions to voters, and the poll books. The county clerks are required to send a designated number of these with other specifically enumerated supplies to be provided by him, to the election judges of each of the several voting precincts and election districts of his county; but an envelope for the return of the poll books or the mailing thereof is not among the supplies so enumerated. Sec. 56-324.

It thus appears that the Secretary of State was not authorized to send to the county clerk with the poll books and instructions to voters the envelope in question, nor was the county clerk authorized to send such an envelope to the election judges of the respective voting precincts and election districts of Rio Arriba County.

The following statutes are material to a decision:

"Immediately upon the conclusion of the counting and tallying of the votes and certifying the same and placing the ballots, affidavits for assistance, and envelopes in the ballot box, said ballot box, all election supplies, and one [1] poll book, or where there are counting judges one [1] poll book certified by each set of election officers, and the book of bound original affidavits of registration shall be immediately returned to the county clerk by the judges, and the other poll book or books shall be immediately placed in the mailing tube and mailed to the secretary of state. The poll book, registration book, and unused election supplies returned to the county clerk shall not be placed in the ballot box * * *.

"If the voting place is not more than twenty-five [25] miles distant from the county seat, the ballot box, key, poll book, the book of bound original affidavits of registration and unused supplies shall be delivered forthwith to the county clerk by one [1] or more of the judges in person, but the same may be sent to the county clerk by messenger selected by the judges for that purpose, if the county seat is more than twenty-five [25] miles distant.

"Where any ballot box, any poll book, book of bound original affidavits of registration, are not delivered in accordance with these instructions within twenty-four [24] hours of the close of the polls, the vote in that precinct shall not be counted or canvassed unless a petition is presented to the district judge of the district within which such precinct is contained and a sufficient showing made that the delay was due to forces beyond the control of the election officials, and then only when said district judge shall so find and make an order that the votes cast in said precinct shall be canvassed and become part of the final election result. Said petition may be

filed in the district court by any election official or any interested party without cost." N.M.Sts.1941 Sec. 56-344.

"Within six [6] days after the election, the board of county commissioners of each county sitting as a county canvassing board, shall proceed to canvass the returns of such elections, and declare and certify the result thereof in the following manner * * *". (Here follows in detail the manner in which the county canvassing board is required to canvass the election returns.) N.M.Sts.1941 Sec. 56-349.

The first ground of demurrer is as follows: "First: The complaint herein should be dismissed as to the defendants herein because. the obligee named in said bonds is the State of New Mexico, and the Court rules that no action can be maintained on such official bonds other than by the obligee in the absence of statutory authority."

The common law rule that only the obligee named in the bond of a public official can maintain a suit thereon, is not the law in this state, unless the obligee named is the sole beneficiary. If such bond is executed for the benefit of a third person, that person can sue thereon in a proper case.

A rule that permits actions on contracts by third persons for whose benefit they are made (known as the American Rule) has long been the law in a majority of the American states and in the courts of the United States. Pomeroy's Code Rem. (5th Ed.) Sec. 77; Howard v. United States, 184 U.S. 676, 22 S.Ct. 543, 46 L.Ed. 754; Pickle Marble & Granite Co. v. McClay, 54 Neb. 661, 74 N.W. 1062; McDonald v. Davey, 22 Wash. 366, 60 P. 1116; Burr. Admx. v. Beers, 24 N.Y. 178, 80 Am.Dec. 327. "The result of these and other decisions is that the third person for whose benefit an undertaking is entered into between other parties, may sue upon it although such undertaking is an instrument in writing and under seal. This doctrine is plainly a departure from technical notions of the common law, which did not permit a person to sue upon a contract unless he was a party to it, or unless the consideration moved from him, and which expressly forbade an action upon a sealed undertaking by a stranger." Pom.Code Rem. (5th Ed.) Sec. 77.

But I need not resort to that rule. A person for whose benefit a contract is made is the real party in interest, and as such is the proper party to prosecute an action thereon. Rule of Civil Proc. 17(a). The rule has application to bonds of public officials in which third persons are beneficiaries. Lynch v. Burgess, 40 Wyo. 30, 273 P. 691, 62 A.L.R. 849; Bollin v. Blythe, C.C., 46 F. 181; Stewart v. Carter, 4

Neb. 564; Hollister v. Hubbard, 11 S.D. 461, 78 N.W. 949. The trial court erred in sustaining the motion to dismiss on the first ground stated in his order.

The following are the second and third grounds upon which the order of dismissal was based:

"Second. That the actions of neither of the defendants Gaby B. Madrid and Jessie M. Gonzales, were the proximate cause of plaintiff's alleged damages complained of.

"Third. That the defendants, Jessie M. Gonzales and Gaby B. Madrid, could not have reasonably foreseen that any injury would result from the printing of improper instructions upon the mailing envelopes, for the following reasons:

(a) That it was not foreseeable that the precinct election officials would ignore their statutory duty, or ignore the official instructions contained in the poll books.

(b) That they could not foresee that the county canvassing board would improperly refuse to canvass and count the results from the four precincts involved in this action.

(c) That they could not foresee that the district judge would improperly construe the law in either the recount proceedings or contest proceedings.

(d) That they could not foresee that Herrera would become insolvent or take out bankruptcy."

These grounds of dismissal each go to the question of "proximate cause."

Whether a negligent act is the proximate cause of an injury is a question of ultimate fact, and not of law, if reasonable men would differ in their answers.

"The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place. Scot v. Shepherd (Squib Case) 2 W.Bl. 892. The question always is: was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause, intervening between the wrong and the injury?" Milwaukee & St. P. R. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256.

The "proximate cause" of an injury is "that which in natural and continued sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred, Gilbert v. New Mexico Const. Co., 39 N.M. 216, 44 P.2d 489. "It is not meant the last act of cause or nearest act to the injury, but such act as actually aided in producing the result as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause." Quoted with approval in Rix v. Town of Alamogordo, 42 N.M. 325, 77 P.2d 765, 769. See an interesting article entitled "Proximate cause in Negligence" by Prof. Charles O. Gregory, 6 University of Chicago Law Review, p. 36. After discussing various rules, the author concludes by quoting from 1 Street's Foundations of Legal Liability 110, as follows: "The terms 'proximate' and 'remote' are thus respectively applied to recoverable and non-recoverable damages. * * * It is unfortunate that no definite principle can be laid down by which to determine this question. It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. * * * The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other."

The defendants assert that certain intervening acts of others were the proximate cause of the plaintiff's injury; that their acts could not have been foreseen or anticipated, and therefore under the rule adopted by this court in Gilbert v. New Mexico Const. Co., 39 N.M. 216, 44 P.2d 489, and Reif v. Morrison, 44 N.M. 201, 100 P.2d 229, the acts of the defendant officers were at most the remote cause.

It is said that "The modern trend of judicial opinion is in favor of eliminating foreseeable consequences as a test of proximate cause, except where an independent, responsible intervening cause is involved." 38 A.J. "Negligence" Sec. 58; Sec. 435 Restatement of the Law of Torts; Mourison v. Hansen, 128 Conn. 62, 20 A.2d 84, 136 A.L.R. 413. This seems to be the ruling in a recent English Case, Hambrook v. Stokes (1925) 1 K.B. 141.

What can be "foreseen" (or "anticipated" if we are bound by that rule) has never been determined so that either can be measured by a fixed rule:

The canvassing board was prohibited from canvassing the delayed returns or counting the votes in question, unless and until authorized by the district judge of the district after resort to the procedure provided for by Sec. 56-344 N.M.Sts. supra; and as the district judge, after a hearing so provided for, refused "To find and make an order that the votes cast in said pre-

cincts should be canvassed and become part of the final election result," because of the delay (Sec. 56-344 N.M.Sts.1941), the plaintiff's only remedy was by the contest which he filed and successfully prosecuted. See Valdez v. Herrera, 48 N.M. 45, 145 P.2d 864.

It is obvious that if the envelopes with printed instructions thereon had not been sent to the election judges with the specified election supplies, they *could not,* and therefore would not, have been used for mailing the poll books of the four districts to the county clerk. And it may be assumed that but for the unauthorized acts of the defendant officers in sending contradictory instructions the poll books would have been delivered to the county clerk in due time and as the law directs; in which event plaintiff would have received the certificate entitling him to possession of the office to which he had been elected, without the delay caused by litigation to which he was compelled to resort, else lose his office.

Some of the questions here involved were decided in Reif v. Morrison, 44 N.M. 201, 100 P.2d 229. The defendant had placed in another's pasture poisoned bran, to kill an infestation of grasshoppers. At that time the land was not being used, and there was no danger of injuring any one's livestock. Later the plaintiff leased the land from the owner, and his cattle grazing thereon ate of the poison and died. One of the defenses was that the leasing of the land by the plaintiff was an intervening cause which the defendant could not have anticipated and therefore he owed no duty to the plaintiff. We stated: "The universal rule for whose support there need be no full citation is that: 'If the occurrence of the intervening cause upon which defendant would rely, might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury.' "

The defendant further asserted that he could not foresee that the plaintiff would graze his livestock upon the land, and therefore could not anticipate the injury. In answer to this we stated: "The rule is universal that the injury resulting from any act of negligence must, however, have been such as a reasonably prudent person should have anticipated. * * * "If it may be said that under the circumstances as set forth by plaintiff, a reasonably prudent person would have foreseen *the possibility of live stock* getting to the feed and so suffering injury therefrom, defendant is answerable for his negligence to plaintiff, even had he (defendant) no actual notice of plaintiff's use of the land as pasturage." (My emphasis.)

Another case cited by the defendants on the question of anticipation of injury is Gilbert v. New Mexico Const. Co., supra. The defendant in making excavations for

city improvements had broken a water main in the city of Roswell. The break could have been repaired in two hours, but it remained unrepaired eight hours, during which time the plaintiff's house caught fire and was partially destroyed. The break in the main lowered the water pressure so that the fire could not be extinguished until after serious damage had been done. The claim there was that the defendant could not have anticipated that the city would wait eight hours to repair the main or that Gilbert's house would catch fire at this particular time. This court in holding that the defendant was liable to the damages incurred, stated:

"However, the question is one of fact; becoming one of law only when undisputed evidence discloses a case as to which reasonable minds could not differ * * * And *the question is not whether this particular loss, but whether loss of this kind,* was, or should have been anticipated. * * *

"The other aspect of appellant's contention on proximate cause is that, even if its act could proximately have caused the injury, it did not in this case, because the chain of causation was broken by the intervening negligent delay of the city in making the repairs or in restoring pressure after completion of the repairs.

"It is no doubt true that the injury to appellee might have been avoided by greater diligence or better directed effort on the part of the city. That does not in our opinion interrupt the natural and continued sequence of the original force. The city's negligence was passive merely. * * * It was not independent. The necessity for it to act at all arose wholly from appellant's act. In reason, he who sets a harmful force in motion should not be heard to defend against liability by the claim that another than the injured party might have prevented the injurious result by an active and timely intervention." (My emphasis.)

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not disregard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Sec. 477, Restatement of Law of Torts.

The question of proximate cause and foreseeability was present in the case of

Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 185, 123 A.L.R. 933. The defendant labeled the word "Kerosene" on a bottle containing water, which it sent as a part of a "process oil display" to a school teacher, to be used by him in conducting experiments before his pupils. During the experiment the teacher poured some of the water from the mislabeled bottle on sodium metal which is highly explosive when combined with water, with the result that he received severe burns and the loss of an eye. The defense was that the injury could not have been foreseen. Regarding this the Circuit Court of Appeals said: "This, therefore, is one of those cases where not unusual human conduct produces results so unexpected and tragic as to startle and amaze. Yet legal precedents and human experience combine to show that bizarre accidents are far from unlikely, and recovery cannot be denied because of the uniqueness of the happenings. Usually judicial rationalization is couched largely in terms of "foreseeability," but it is obvious that, if it is the exact accident which must be foreseen, then recovery must regularly be denied (as it is not). Perhaps in this class of cases, it is easier to reach decision than to explain it, for explanations tend towards abstract generalities, under which are lumped all sorts of accidents, from railroad and automobile collisions to chemical explosions. At any rate, given some culpability on the part of a defendant, i. e., some conduct involving a departure from the natural, and hence the reasonable, then the courts look more *for the possibility of hazard of some form to some person than for an expectation of the particular chance that happened."* (My emphasis.)

The defendants and the trial court were apparently of the opinion that unless the plaintiff could have foreseen that the acts of the officials would result in the exact injury complained of here that no liability could ensue, notwithstanding negligence. This is the clear meaning of the third ground for dismissal. So far as we are informed it is not the rule in any jurisdiction, certainly not here. No rule has been stated that will apply to all cases of negligence. But, as stated in Gilbert v. New Mexico Const. Co., supra [39 N.M. 216, 44 P.2d 494], "The question is not whether this particular loss, but whether loss of this kind, was or should have been anticipated."

To say that it was not "foreseeable" that some precinct election officials would follow the instructions printed on the envelope is denying exactly what the defendant officials expected and intended should happen. They would not have sent the envelopes to the election officials if they had not anticipated that the poll books would be placed therein and forwarded to the county clerk by mail.

Whether the judges of election were negligent is beside the question. They followed the instructions sent them by defend-

ant officers, whose duty it was to prepare and distribute instructions. The act of the election officers in mailing the poll books was not an independent intervening force. It was an expected sequence, direct and continuous from the original wrongful act started by a superior and controlling agency. The defendant officers cannot disclaim responsibility for a situation which was the expected and intentional result of their own unlawful acts. "The proximate cause is the efficient cause, the one that sets the other causes in operation. The causes that are merely incidental or instruments of a *superior* or controlling agency, are not the proximate causes and the responsible ones though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is to be charged with the disaster." Aetna Ins. Co. v. Boon, 95 U.S. 117, 24 L.Ed. 395; Rix v. Alamogordo, supra; 38 A. J. "Negligence" Sec. 56.

When the Secretary of State sent to the various county clerks in the state more than 1,000 poll books and, we assume, envelopes for their return by mail to the several county clerks of the state, she might well have anticipated that some would be lost or delayed in the mail. The county clerk of Rio Arriba county should have known, whether she did or not, that the mail in that county from some country precincts more than 25 miles from the county seat, could not reach her in due course within the 24 hours in which the poll books were required by law to be delivered.

When the poll books were mailed from the four election districts, "mischief was afoot." * * * The mail was not delivered, and could not have been delivered, to the county clerk within 24 hours after the polls were closed on election day, with the result that the canvassing board did not, and could not legally, canvass and count the ballots so returned. As the loss of the votes not counted would deprive the plaintiff of his office, he resorted to court action. I do not attach any importance to the intervening judicial proceedings, as without them the damage to plaintiff would have been much greater. Nor does the fact that Herrera was financially irresponsible enter into the question, or relieve defendant officers of liability for their negligence. He may have been, and probably was, insolvent from the beginning. This was not an intervening independent force that caused the injury.

We cannot say as a matter of law that the unlawful acts of the defendant officers was not the proximate cause of plaintiff's damage.

The fourth ground upon which the motion to dismiss was sustained is as follows: "Fourth: The complaint fails to allege any statutory duty resting upon the said Gaby B. Madrid or Jessie M. Gonzales affording plaintiff a right of action against said de-

fendants, or either of them, in the absence of any allegation of malice, dishonesty, or wilfulness on the part of said public officials."

The duties of the Secretary of State and county clerk with reference to preparing and·distributing election supplies are strictly ministerial. The statute enumerates specifically of what these supplies shall consist, their contents and the manner of their preparation and distribution to the election officers. There is no factor upon which discretion could act. It was the duty of the Secretary of State and county clerk to Not send out for use by the election officers unauthorized instructions, contradicting those which the law required them to prepare and send to election precinct officers.

It is immaterial whether the acts of those officers in sending out the unauthorized instructions were by virtue of office or under color thereof (State v. Llewellyn et al., 23 N. M. 43, 167 P. 414); they were official acts if they intended the acts to be official and would not have so acted if they had not been officers. State ex rel. Penrod v. French, Sheriff, 222 Ind. 145, 51 N.E.2d 858, 149 A.L.R. 1084, Cooper v. O'Conner, 69 App. D. C. 100, 99 F.2d 135, 118 A.L.R. 1440.

The plaintiff asserts that the defendant officers not only owed a duty to the public not to send out to the election officers the misleading instructions, but he was under a like duty to the plaintiff as a candidate for office. The rule which is not in dispute is well stated in Antin v. Union High School Dist. No. 2 of Clatsop County, 130 Or. 461, 280 P. 664, 669, 66 A.L.R. 1271, as follows: "A public officer, however, is responsible to a private party for his own negligence or wrongful acts when acting beyond the scope of his authority, or when acting within the scope of his authority, if the wrong done is not a violation of a duty which he owes solely to the public. If the duty is solely a duty which the officer owes to the public, then the officer is not subject to the suit of a private party, even though it has resulted in injury to such party. But if the duty is one which the officer owes both to the public and to a private individual, and the private individual is injuriously affected specially, and not as a member of the public, then for such violation the injured party may sue for the wrong done." Also see II Cooley on Torts (4th Ed.) Sec. 300; 43 A. J. "Negligence" Sec. 279.

It is true that the defendant election officers owed a duty to the public not to send out the misleading instructions. It is also true that the plaintiff was injured specially, not as a member of the public. The only question, therefore, under this assignment, is whether the defendant offi-

cers owed a duty to candidates for office not to send out such instructions.

The state Constitution provides that "Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any public office in the state except as otherwise provided in this constitution." N.M.Const. Art. 7, Sec. 2.

Also, that "All elections shall be by ballot, and the person who receives the highest number of votes for any office shall be declared elected thereto. N.M.Const. Art. 7, Sec. 5.

The legislature of this state has enacted a comprehensive election code providing for the selection of public officers by a vote of the qualified electors. To guarantee the constitutional right to office if elected by a majority of the qualified electors, elaborate proceedings are provided therein. The public is necessarily interested in these elections, as by this means officers are secured to carry on the business of government. But a qualified citizen is entitled to an office if voted for by a majority of the electors entitled to vote for him. The procedure for the selection of officers is provided, not only for the purpose of electing officers to carry on the business of government, but to guarantee to one who is elected his constitutional right to the office. It follows that every officer whose prescribed duties may affect this constitutional right owes a duty to candidates, as well as to the public, to do nothing unlawful that may deprive them of that right. Duties to be performed by the several public officials are duties owed not only to the public but to candidates for office, though not specifically provided by statute.

No case exactly in point has been discovered by me, nor has one been cited. There is a collection of cases in an annotation entitled "Liability of Election Officers" in 153 A.L.R. beginning at page 109. Under a sub-head "Liability for impairing candidate's chance of election" at page 148, a number of cases are cited.

In Judd v. Polk, 267 Ky. 408, 102 S.W.2d 325, a county clerk and his surety were held liable to a candidate deprived of his office by the clerk's failure to place his name on the ballot.

In Larson v. Marsh, 144 Neb. 644, 14 N.W.2d 189, 153 A.L.R. 101, it was held that the secretary of state was liable to damages for an injury resulting proximately from the failure of such officer to comply with the candidate's request to designate his post office address after his name on an election ballot, his name being the same as that of another candidate for the same office. It appears in that case that the statute required the designation of the post office address in such cases if requested by the candidate. The argument

is that this statute made it a duty of the secretary of state to obey the request of the candidate and therefore there is a difference here. It is true that there is no such statutory duty here in favor of a candidate, but it seems that none is required in a case where the duty is plainly to be inferred.

It was held in Sterling v. Turner, 1672, 1 Vent. 206, 86 Eng.Reprint 139, that a candidate for the office of Bridge Master of London Bridge was entitled to a voice vote in the choice to fill that office, and the Lord Mayor's failure to put it was a ground for an action for damages.

In Frank v. Eaton, 225 App.Div. 149, 231 N.Y.S. 477, it was held that defendant officials were liable to damages for having placed the plaintiff's name in such an erroneous position that his election was invalidated.

The question depends upon whether the defendant officers owed a duty to candidates to send correct, and only correct, instructions to the election officers, and I hold that they owed that duty to the plaintiff. Accordingly it should be held that the trial court erred in sustaining the motion upon the fourth ground stated in his order.

In considering the first assignment of error, I said that an action may be brought in the name and in behalf of any individual for whose benefit an official bond was executed, whether the state or an official is named as obligee. Another question was posed by plaintiff under this assignment of error, to wit: Whether the bond in question was in fact made for the benefit of any third person, and particularly for plaintiff's benefit.

Defendants assert that this question was not ruled upon by the district court. But I am of the opinion that the trial court ruled upon it in holding generally that the state only (the obligee names therein) could sue on these particular bonds.

The plaintiff is not a party to the contracts and may maintain an action thereon only if they were executed for his benefit. There is no statute specifically authorizing such suit. The form of official bonds in this state is prescribed by statute. The surety is liable on such bond for injury to any one *for whose benefit* it may be executed, if the principal does not "well and faithfully perform *all his duties* as such officer * * * etc." The plaintiff asserts that as the principal's obligation is to well and faithfully perform all his duties as such officer, that it includes duties owing not only to the state but third persons.

In most states there is statutory authority for suits on official bonds by persons injured by a wrongful official act or default of the principal, but we have no such statute in New Mexico.

The principal authority upon the question is Howard v. U. S., 184 U.S. 676, 22 S.Ct. 543, 546, 46 L.Ed. 754. The question there was whether the bond of a clerk of a United States court was liable to third persons for money deposited with him without an order of court, which he embezzled. There was no federal statute authorizing such suit. The bond was conditioned that the clerk faithfully discharge the duties of his office and seasonably record the decrees, judgments and determinations of the court. There were statutes authorizing the deposit of money with the clerk, and this had been the custom for 100 years. The court said:

"But it is suggested that, in the absence of a statute distinctly so providing, the clerk was not entitled to receive the money deposited in payment and satisfaction of Stewart's claim. It is true that no statute declares in words that a clerk may receive money brought into court for the purposes of a pending suit. But it is clear that Henry county was entitled to bring into court and tender to its adversary the amount it was willing to pay in satisfaction of his claim. It cannot be that it was the duty of the judge of the court himself to have received the money and personally deposited it as required by law. No one has ever supposed that a judge was under obligation to perform such services. Who, then, was to receive the money? Plainly it was the duty of the clerk, who

was the arm of the court, kept its records showing money paid in by suitors or officers, and was under bond conditioned that he would faithfully perform all the duties of his office. He was allowed by statute a commission 'for *receiving*, keeping, and paying out money in pursuance of any statute or order of court.'

\* \* \* \* \*

"In our opinion, 'Congress intended that the required bond should protect private suitors as well as the United States, and therefore, no statute forbidding it, a private suitor may bring an action thereon for his benefit in the name of the obligee, the United States. Such must be held to be the legal intendment of existing statutory provisions. The United States, or rather the court which had custody of the bond, is to be regarded as a trustee for any party injured by a breach of its conditions.

"Murfree in his Treatise on Official Bonds says: '§ 323. It is usually provided in statutes authorizing official bonds to be required of state, county, or municipal officers, that suits may be brought upon them in the name of the official obligee "upon the relation" or "to the use" of the party injured by the breach of the bond or interested in its enforcement. Whenever, however, this express provision is omitted in the statute itself the deficiency is supplied by the construction given to such statutes by the courts whenever a proper case for such a ruling is presented. In

a Maryland case (1858), State, to use of Mayor, etc., of Baltimore v. Norwood, 12 Md. 177, 194, the court held that it was not necessary for a plaintiff before instituting a suit upon an official bond payable to the state, to obtain the state's permission to do so; and this although there was in the statute which prescribed the bond no specific provision for making the bond payable to the state, or for giving the party interested the right to sue upon it. The court adds, however, that "there is no doubt that it is incumbent on the party suing on the bond to show that he has an interest in it, before he could recover in a regular trial prosecuted to verdict." The rationale of official bonds is well expressed by the court in this case.' "

The court in effect held that if from all the circumstances touching the question it clearly appears that the bond was made for the benefit of third persons; then such persons could sue thereon, notwithstanding the absence of specific statutory authority. That was a much stronger case than the one here being considered, but the question in each case was whether the bond was made for the benefit of third persons. It is usual for the United States, State, Governor, or other public official to be named as obligee in bonds of public officials, though made for the benefit of persons not parties to the contract.

The condition of the bonds in suit was that the respective defendant official should each well and faithfully perform *all her duties* as such public officer; not just those owing by her to the state.

I am of the opinion that under the facts alleged the sureties on the defendant officers' official bonds are liable for the injury to plaintiff.

I am aware that the authorities are not harmonious on this question, but it appears to me to be reasonable that if a public official under his obligation owes duties to individuals as well as to the state which he undertakes to perform and his sureties agree to be responsible for the faithful performance of *all his duties,* the sureties' liability extends to injuries to third persons.

The following cases lend some support to my conclusion on this question: Erickson v. Anderson, 77 Mont. 517, 252 P. 299; Richards v. Tynes, 149 Okl. 235, 300 P. 297; Hollister v. Hubbard, 11 S.D. 461, 78 N.W. 949; City of Cairo for Use of Robinson v. Sheehan, 173 Ill.App. 464; American Guaranty Co. v. McNiece, 111 Ohio St. 532, 146 N.E. 77, 39 A.L.R. 1289; Lee v. Charmley, 20 N.D. 570, 129 N.W. 448, 33 L.R.A.,N.S., 275; Town of Lester, for Use of Richardson v. Trail, 85 W.Va. 386, 101 S.E. 732; Scott v. Feilschmidt, 191 Iowa 347, 182 N.W. 382; Judd v. Polk, 267 Ky. 408, 102 S.W.2d 325.

The judgment of the district court should be reversed and the cause remanded for a new trial, for the reasons stated.