S. E. WARREN, doing business as Home Oil Company, Appellant,

v.

SKELLY OIL COMPANY, a corporation, Appellee.

No. 5269.

United States Court of Appeals
Tenth Circuit.

July 17, 1956.

Howard B. McClellan, Clayton, N. M. (Timothy P. Woolston, Albuquerque, N. M., on the brief), for appellant.

Ross L. Malone, for Atwood & Malone, Jr., Roswell, N. M. (Charles L. Bacon, Marshall, Mo., on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This action was originally instituted in three counts by S. E. Warren, doing business as Home Oil Company in New Mexico, against Skelly Oil Company, a corporation, to recover damages allegedly occurring through breach of contract and tortious conduct by Skelly. The latter claim was apparently abandoned at trial and no present complaint is made.

Appellant is a distributor and jobber of petroleum products in New Mexico and neighboring states. Skelly Oil Company is a producer, refiner, and distributor of similar products throughout the same area and elsewhere. In 1949 the parties entered into a Franchise Sales Agreement under the terms of which Warren agreed to purchase and Skelly to furnish designated minimum quantities of gasoline and related products f. o. b. seller's shipping point at "seller's current tank car price to jobbers on date of shipment". The products furnished Warren by Skelly were not refined by Skelly, but were purchased from the Shamrock Refining Company at Sherrin, Texas, under an agreement whereby Skelly paid Shamrock a price equivalent to the Chicago Journal of Commerce low at the date of delivery. The Journal was, during part of the period in question, a trade publication carrying price quotations on petroleum products throughout the United States.

In 1952 the Chicago Journal ceased publishing and Skelly re-negotiated their contract with Shamrock, adopting the

Wall Street Journal low as their agreed price base. Still later this contract was changed to adopt the Shamrock posted price and no further reference to trade publications was included in Skelly-Shamrock agreements. During the entire period that Skelly furnished products to Warren the price charged was ¼ cent per gallon over Skelly's cost from Shamrock. In count one of his complaint Warren sought to recover the difference between the amount paid by him and that which would have been paid had Skelly charged ¼ cent per gallon over the Chicago and Wall Street Journal lows for the entire contract period. The trial court directed a verdict contrary to this contention on this count.

On June 2, 1954, a meeting was held by appellant Warren and representatives of Skelly concerning their contractual relations. As to what transpired at that meeting the testimony is in sharp conflict, Warren testifying in substance that it was just a general discussion of their mutual problems; witnesses for Skelly asserted that Warren flatly stated he quit and would buy nothing further from Skelly. On June 10th a formal cancellation agreement was executed by the parties. Immediately after the meeting of June 2nd Skelly representatives began contacting retail outlets held by Warren, asserting that Warren was no longer distributing Skelly products and urging and obtaining contracts with such retail outlets for direct distribution to them by Skelly. For damages allegedly resulting from such acts and conduct by Skelly appellant complains in his second count.

The factual controversy so occasioned was submitted to the jury and findings contrary to appellant's claims were returned. Aggrieved by the trial court's refusal to give two requested instructions on count two and by his direction on count one, Warren appeals.

The uncontroverted testimony reveals that the phrase "seller's current tank car price to jobbers on date of shipment" is a common phrase in the industry sometimes shortened to "spot price", and indicates a price at which a refiner or distributor will sell to those purchasers qualified by contract or custom to buy quantity amounts at wholesale rates. The spot price may vary from day to day and is within the discretion of the seller as to amount, the essence of seller's agreement being that he will not sell to different jobbers at different prices. Competition in the industry is relied upon to level the spot price among producers.

It is not denied that Warren at all times purchased his products at Skelly's tank car price, Sherrin, Texas, and that he enjoyed the same rates as other jobbers. The fact that Skelly for several years set their spot price by reference to their contract of purchase with Shamrock and its provision relating to Chicago and Wall Street Journal lows is of no comfort to appellant. He is neither a party to nor a beneficiary of the Skelly-Shamrock contract. There being no disputed factual matter determinative of the issues in appellant's first count the trial court very properly directed a verdict. Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, affirming 222 N.C. 367, 23 S.E.2d 334. Valdez v. Gonzales, 50 N.M. 281, 176 P. 2d 173.

Appellant submitted two requested instructions in support of his second count, each of which the trial court rejected. The requests follow:

No. 1. "If you find from a preponderance of the evidence that the contract (Plaintiff's Exhibit "A") contains express provisions by which the parties to that contract may terminate or modify that contract, and if you further find that such express provisions for termination or modification of the contract were not performed, you must find that the contract (Plaintiff's Exhibit "A") was in full force and effect between November 16, 1949 and June 10, 1954."

No. 2. "If you find from a preponderance of the evidence that the contract (Plaintiff's Exhibit "A") existed between the parties S. E. Warren and Skel-

ly Oil Company between November 16, 1949 and June 10, 1954, and that the defendant, Skelly Oil Company, by its agents or employees, falsely and knowingly represented to any third party or parties with whom S. E. Warren had a trade or business relationship, that no such contract existed, and that the purpose of such agents or employees of Skelly Oil Company was to induce such third party or parties to do business with Skelly Oil Company to the exclusion of S. E. Warren, you must return your verdict for the plaintiff and you are justified in awarding damages to plaintiff in the sum of $60,000.00 and punitive or exemplary damages in the sum of $50,000.00."

■ Request No. 1 assumes, as a matter of law, that the Franchise Sales Agreement, which contains a provision allowing termination for cause upon ten days written notice, can be cancelled in no other way. In the absence of statutory provisions such is not the law and in the instant case would totally ignore appellee's principal defense that should its version of Warren's statements made at the June 2nd meeting be believed by the jury appellee was free to act upon his renunciation and anticipatory breach of the contract. One who renounces a contract *in toto* cannot be heard to complain that his assertion was believed and acted upon. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953.

■■ Request No. 2 is patently erroneous in that it instructs the jury that maximum damages are "justified". The amount of damages returnable in a jury case of this nature is a factual matter for the jury, the amounts prayed for being only maximum limits. Quincy Horse Railway & Carrying Co. v. Schulte, 7 Cir., 71 F. 487. Hall v. Advance-Rumley Thresher Co., 65 Mont. 566, 212 P. 290.

Appellant's theory of recovery having been adequately covered by instructions given by the court there is no error.

The judgment is affirmed.